David ESCOBAR, Relator,

v.

Ken SUTHERLAND, El Paso County Democratic Chairman, the Executive Committee of the El Paso County Democratic Party, and Helen Jamison, Director of the El Paso County Elections Department, Respondents.

No. 08–96–00037–CV.

Court of Appeals of Texas,
El Paso.

Feb. 15, 1996.

---

Scott Segall, Martin & Segall, Luther Jones, Jones & Georges, E. Link Beck, E. Link Beck & Associates, El Paso, for Relator.

Stuart R. Schwartz, Ken Slavin, Brower & Slavin, Michael R. Wyatt, Texas Rural Legal Aid Inc., Evelina Ortega, Caballero & Ortega, L.L.P., Steven C. James, El Paso, for Respondents.

Before BARAJAS, C.J., and McCLURE, and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an original proceeding in mandamus. Relator, David Escobar, seeks a writ of mandamus from this Court directing the El Paso Democratic Party Chair, the Executive Committee of the El Paso Democratic Party, and the Director of the El Paso County Elections Department to replace his name on the ballot for the 1996 Democratic Party Primary. We conditionally grant the relief requested.

This is yet another matter from El Paso County which calls into question the actions of an individual who is charged with the responsibility of certifying names of candidates for political office for placement on the electoral ballot. *See Bejarano v. Hunter,* 899 S.W.2d 346, 350 (Tex.App.—El Paso 1995, orig. proceeding). The matter bursts with allegations of omissions, commissions, negligence and criminal conduct. To the extent that the underlying disputed facts and circumstances of this case may further erode public confidence and trust in our elected and appointed officials, political candidates and the electoral process in general, we shall attempt to end such erosion.

## I. SUMMARY OF THE EVIDENCE

The facts which serve as the underpinnings of this original proceeding are as follows:

David Escobar, an El Paso attorney, seeks to have his name placed on the ballot for the El Paso County Democratic Party's nomination for the office of El Paso County Attorney. The primary election is March 12, 1996. The first day for filing an application for a place on the ballot was December 3, 1995. The deadline for filing was 6:00 p.m., January 2, 1996. Early voting in person commences February 21, 1996. Escobar appeared in person at the El Paso County Democratic Party headquarters at the eleventh hour on the evening of the last day seeking to file his application for a place on the ballot. He contends that while at the County Democratic Headquarters, he handed Ms. Cecilia Ann Juarez, a notary public, two applications—an original printed form which bore his signature and a faxed form which was otherwise completed, but lacking a signature.[1] Ms. Juarez acknowledges that she

---

1. The sole application made a part of this record reflects that it is a faxed copy, as evidenced by

personally witnessed Escobar sign his application and that she administered the required oath at the time she notarized the application. Of greater significance however, is her declaration that another of Escobar's applications did not bear his signature, but that she notarized the document nonetheless.[2] Escobar further contends that both applications were filed with party officials along with the required filing fee. Ken Sutherland, the El Paso County Democratic Chair[3] accepted Escobar's application and the accompanying filing fee and certified his name for inclusion as a candidate for El Paso County Attorney on the Democratic Party's official list of candidates for the primary election. Thirty-one days later, on February 2, 1996, Sutherland advised Ms. Helen Jamison, Director of the El Paso County Elections Department, in writing, that Escobar's application for a place on the ballot was not signed by the candidate and, as a consequence, his name would be removed from the ballot. We note that Sutherland removed Escobar's name from the ballot only after consultation with the General Counsel of the Texas Democratic Party and the Office of the Texas Secretary of State.

The County Democratic Chair asserts that only one application was filed, and that the application on file fails to bear the requisite signature. Escobar counters by alleging that two applications were filed and that the properly executed application for place on the ballot has been lost, misplaced, or discarded and is no longer in the files of the El Paso

Democratic Party. Both individuals have attempted to persuade this Court of their respective positions by attaching numerous affidavits.

Exactly what happened to the signed application, or whether it ever existed, is the subject of theory, speculation, conjecture, and accusation. What is clear is that carelessness and confusion have once again combined to needlessly complicate the electoral process. As shown above, the facts of this case are disputed and, for anyone honestly concerned with the sanctity of the electoral process, disheartening. That is so, regardless of political affiliation. Our determination of the issue, however, is unrelated to whether Escobar filed an additional, legally sufficient application, or whether he intended his printed name to be his signature on the unsigned application now before us. Our determination is also made without regard to the merits of Escobar's candidacy or that of his opponent, incumbent Jose Rodriguez.

■ Appellate courts have no ability to resolve factual disputes in a mandamus action. *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 714 (Tex.1990); *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978); *Bejarano,* 899 S.W.2d at 349; *Strachan v. Lanier,* 867 S.W.2d 52, 53 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding); *Leach v. Fischer,* 669 S.W.2d 844, 846 (Tex.App.—Fort Worth 1984, orig. proceeding). It is well settled that the purpose of mandamus is to execute, not adjudicate. *Wortham v. Walker,* 128 S.W.2d 1138, 1151 (Tex.1939);

---

the transmission data found at the top of the document. Federal Communications Commission, 47 C.F.R., § 68.318(c)(3) (1994), states that it is illegal to transmit a fax in the United States which does not contain the date, time and identification of the business or individual sending the fax, as well as the telephone number of the sending machine of such business or individual. The existence of the original signed application is in question.

2. The purported copy of Escobar's application at issue in the instant case clearly demonstrates that the notary public executed the document without the benefit of Escobar's signature. By her own admission, she "noticed that the second application did not have (Escobar's) signature," but "decided to notarize the second application" anyway, believing that it was Escobar's own copy. Those actions are contrary to law. Ac-

cordingly, the Clerk of this Court is hereby directed to forward a copy of this opinion, as well as a copy of Ms. Juarez's affidavit, to the Office of the Texas Secretary of State, Notary Public division, for appropriate action.

3. We note that current statutes describe the public official in the instant case as the county party "chairman." However, we further note that the Texas Supreme Court Gender Bias Reform Implementation Committee has recommended that the Legislature insure the proper use of gender-neutral language in our statutes. We trust that the Texas Legislature will further those goals and recommendations in its next session. Order appointing Gender Bias Reform Implementation Committee, Misc.Docket No. 94–9175 (Oct. 18, 1994), Gender Bias Task Force of Texas, Final Report, Recs. 35 and 36, at 11 (1994).

*Burke v. Hutcheson,* 537 S.W.2d 312, 314 (Tex.Civ.App.—Eastland 1976, orig. proceeding). We determine instead the very narrow legal question of the authority of the County Chair to independently remove a candidate's name from a primary ballot after the County Chair has complied with the statutory obligation to certify the names of candidates whose names are to appear on a primary ballot. We find that the County Chair lacks the proper authority and that any action to remove such names, absent judicial intervention, is null and void and of no effect.

## II. JURISDICTION

As a threshold matter, we note that jurisdiction to compel an election officer to act is vested in the appellate courts. The Texas Election Code provides:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer.

TEX.ELEC.CODE ANN. § 273.061 (Vernon 1986); *see also Bejarano,* 899 S.W.2d at 349.

## III. DISCUSSION

### A. The Candidate's Responsibilities

We first turn to the comportment of the candidate David Escobar. As noted earlier, Escobar is a licensed attorney who seeks the office of El Paso County Attorney. Although the filing period for a place on the ballot began on December 3, 1995, Escobar, for reasons immaterial to the disposition of the instant action, chose to present himself at a late hour on the last day of the filing period, i.e., January 2, 1996. The record clearly demonstrates that confusion dominated at the party headquarters immediately prior to the closing of the filing period. Included in all the confusion was Escobar who was attempting to rightfully secure a place on the ballot and who contends that two applications were presented for filing for a place on the ballot, one of which was notarized, but not otherwise formally signed and sworn.

Section 141.031 of the Texas Election Code clearly and unambiguously provides the re-quirements for an application for a place on the ballot in elections generally, including a primary election. TEX.ELEC.CODE ANN. §§ 141.031 (Vernon Supp.1996); 172.021(b) (Vernon 1986). Section 141.031 provides, in pertinent part:

> A candidate's application for a place on the ballot that is required by this code must:
> (1) be in writing;
> (2) *be signed and sworn to by the candidate and indicate the date that the candidate swears to the application;* . . . .

TEX.ELEC.CODE ANN. § 141.031 (Vernon Supp.1996) (emphasis added).

As this Court has noted on an earlier occasion, it is the **candidate** who is primarily responsible and accountable for properly completing and timely filing a proper application for a place on the ballot. *Bejarano,* 899 S.W.2d at 351. It is not the County Chair's responsibility, it is not the Election Administrator's responsibility, and it certainly is not the responsibility of the voting public who wish to someday cast their vote for the candidate. This accountability is not for the intentions but for the deed. In properly completing the application, the signing of the application and the swearing to support and defend the Constitution and laws of the United States and the State of Texas are both essential parts which are required to preserve and protect the electoral process.

That the application be signed and sworn to is **mandatory,** not directory. The case law supports this strict statutory construction of the provisions of the Election Code. A candidate for public office must comply with **all** statutory requirements to be entitled to have his or her name on the ballot. *Brown v. Walker,* 377 S.W.2d 630, 632 (Tex.1964) (orig. proceeding); *O'Neill v. Bentsen,* 824 S.W.2d 744, 746 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). If the word "must" appears in the Election Code, then that section requires mandatory compliance. *O'Neill,* 824 S.W.2d at 744; *Cohen v. Strake,* 743 S.W.2d 366, 368 (Tex. App.—Houston [14th Dist.] 1988, orig. proceeding). The Texas Supreme Court has

emphasized that the sections of the Code dealing with candidacy for political office are mandatory and are to be strictly enforced. *Wallace v. Howell*, 707 S.W.2d 876, 877 (Tex. 1986) (orig. proceeding). As in *Bejarano*, this Court once again finds itself with a candidate who has failed to adhere to the strict constraints of a statute designed to protect not only the candidate, but the electoral process in general.

 While the County Chair is tasked with the initial responsibility of determining an individual's entitlement for a place on the ballot, in the end, it is the candidate who must insure that the application complies with established law. If the candidate does not, he is at risk of having his candidacy rejected; if not by the County Chair, then by the courts. It is the candidate's responsibility simply because it is the candidate's name that will (or will not) appear on the ballot. *See generally Bejarano*, 899 S.W.2d at 351 (candidate for El Paso city representative filed deficient petition in lieu of filing fee). As noted, this Court cannot resolve the above factual disputes, but we find such resolution of no consequence given the fact that the El Paso County Democratic Chair, on behalf of the party, accepted Escobar's application and certified his name for placement on the primary ballot.

### B. The County Party Chair's Authority and Duties

#### 1. Acceptance of Applications for Place on Primary Ballot

 We next turn to the duties, responsibilities, and authority of the County Chair. The voting public must have the utmost confidence and trust that the election process is fair for all citizens who may seek a higher public calling. It is therefore imperative that election officials comply with procedures as set forth in the Texas Election Code. In determining the County Chair's authority, we must determine the Legislature's intent in enacting the pertinent provisions of the Texas Election Code. When the Court is confronted with a question of statutory construction, it must first determine whether the statute is ambiguous. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815

(Tex.1983). If the meaning of the statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common, everyday meaning. *Cail*, 660 S.W.2d at 815.

A simple reading of TEX.ELEC.CODE ANN. § 141.032 demonstrates that the statute is clear and unambiguous. TEX.ELEC.CODE ANN. § 141.032 defines the County Chair's initial duties, authority and responsibilities with regard to reviewing applications for a place on the primary ballot. Those initial duties and responsibilities are as follows:

(a) On the filing of an application for a place on the ballot, the authority with whom the application is filed shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the ballot.

(b) Except as provided by Subsection (c), the review shall be completed not later than the fifth day after the date the application is received by the authority.

(c) If an application is accompanied by a petition, the petition is considered part of the application, and the review shall be completed as soon as practicable after the date the application is received by the authority.

(d) A determination under this section that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply.

(e) If an application does not comply with the applicable requirements, the authority shall reject the application and immediately deliver to the candidate written notice of the reason for the rejection.

(f) This section does not apply to a determination of a candidate's eligibility.

TEX.ELEC.CODE ANN. § 141.032 (Vernon 1986 & Vernon Supp.1996).

 We find in the instant case, as this Court did in *Bejarano*, that the County Chair's duty to determine whether an application for a place on the electoral ballot

complies with the requirements as to form, content, and procedure is ministerial in nature. The County Chair has no discretion to accept any such application and later certify the corresponding name for placement on the primary ballot if the application fails to meet the applicable statutory requirements. If the application does not comply with the requirements, the County Chair is required to reject the application and immediately deliver to the candidate written notice of the reason for the rejection. TEX. ELEC.CODE ANN. § 141.032(e). The purpose of this statute is two-fold. First, it is designed to protect the candidate who files his application early during the filing period by according him an opportunity to cure any defect. Secondly, it is also designed to protect the candidate who files at the last possible moment, and although this secondary purpose will not apply in many situations, it certainly has application here. That is to say, requiring Sutherland to give notice to Escobar of the defect in his application within five days of filing allows the maximum period of time during which Escobar could seek a judicial remedy. Had Sutherland determined within the initial five day period that Escobar had not signed his application, and had Escobar been notified of that defect, he would have had a window of opportunity between January 7 (five days after he filed his application) and February 20 (the day before the commencement of early voting by personal appearance) in which to seek relief via injunction or mandamus. And where the circumstances are fraught with factual disputes, as they are here, sufficient time would be accorded for a factual determination in the district court **and** mandamus relief before this Court. Suffice it to say, Sutherland failed in his ministerial duty to timely review the applications. That being said, we must determine the import of subsection (d) which provides:

> A determination under this section that an application complies with the applicable requirements does not preclude a subsequent determination that the application does not comply.

TEX.ELEC.CODE ANN. § 141.032(d) (Vernon 1986). This provision does not identify whom shall make the determination, although inas-

much as the entire section is addressed only to the ministerial duty of the County Chair, we conclude that Sutherland is authorized to do so. Of greater concern, however, is the time frame in which the determination must be made.

### 2. Certification of Names of Candidates for Placement on the Ballot

In addition, TEX.ELEC.CODE ANN. § 172.029 (Vernon 1986) provides in clear and unambiguous terms the duties and responsibilities of a County Chair with respect to certification of the names of candidates for placement on the ballot. Section 172.029 provides as follows:

(a) For each general primary election, the state chairman and each county chairman shall prepare a list containing the name of each candidate who files an application for a place on the ballot with him, as the name is to appear on the ballot, and containing the candidate's address as shown on the application.

(b) The candidates' names must be grouped on the list according to office.

(c) Not later than the 10th day after the date of the regular filing deadline for candidates' applications, the state chairman shall deliver his list to the secretary of state, and each county chairman shall deliver a copy of his list to the county clerk, the state chairman, and the secretary of state.

(d) A candidate's name *must* be omitted from the list if, *before delivery of the list,* the candidate withdraws, dies, or is declared ineligible, *or if the candidate's application is determined not to comply with the applicable requirements.*

(e) The secretary of state and each county clerk shall retain each list received until the day after general primary election day.

TEX.ELEC.CODE ANN. § 172.029 (Vernon 1986) (emphasis added). It is undisputed in this instance that Sutherland deleted Escobar's name **after** the list of candidates was delivered.

As noted above, if the word "must" appears in the Election Code, then that section requires mandatory compliance. Section 172.029 also employs the term "shall." We focus our attention then on the word "shall" as used in Section 172.029. Our inquiry is whether the term "shall" should likewise be construed as mandatory.

 The term "shall" in statutes is usually construed to be mandatory, unless legislative intent suggests otherwise. *Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 82 (Tex.App.—Dallas, *aff'd in part, rev'd in part*, 801 S.W.2d 880 (Tex.1990) (reversed on award of attorney's fees); *see also State Bd. of Ins. v. Betts*, 158 Tex. 612, 315 S.W.2d 279, 281 (Tex.1958). Generally, a statutory provision is regarded as mandatory where the power or duty to which it relates is for the public benefit, good, interest or protection, for the security of public rights, or for the advancement of public justice. *Ragsdale*, 790 S.W.2d at 82. There can be no question that compliance with Section 172.029 is for the benefit of the public, rather than the candidate, insofar as the certification of the names for placement on the ballot properly sets the electoral stage to determine the public's future political representation.

 The issue squarely before us is whether Sutherland had either the statutory duty or authority to act after he certified the list of candidates to the proper authorities. Escobar urges that the County Chair may not omit a candidate's name from the list of candidates once the County Chair has delivered the list to the appropriate authorities. Sutherland argues that Section 172.029(d) should be construed to mean that a candidate's name must be omitted before delivery of the list in the event the candidate withdraws, dies or is declared ineligible; but that a candidate's name must also be omitted from the list if the application is determined

to be defective, regardless of the time frame of this latter determination. Jamison endorses this latter construction. While Sutherland's and Jamison's interpretation may be grammatically correct, we are not bound by rules of grammar, and we may disregard them to give effect to manifest legislative intent. TEX.GOV'T. CODE ANN. § 312.012 (Vernon 1988); *see Waters–Pierce Oil Co. v. State*, 48 Tex.Civ.App. 162, 106 S.W. 918 (1907, writ ref'd), *aff'd*, 212 U.S. 86, 29 S.Ct. 220, 53 L.Ed. 417 (1909); *Popham v. Patterson*, 121 Tex. 615, 51 S.W.2d 680 (1932). In construing a statute, we must presume that the entire statute is intended to be effective; that a just and reasonable result is intended; and that the public interest is favored over any private interest. TEX.GOV'T.CODE ANN. § 311.021 (Vernon 1988); *Industrial Accident Bd. v. Martinez*, 836 S.W.2d 330, 333 (Tex.App.—Houston [14th Dist.] 1992, no writ). In other words, we must presume that all parts of the statutory body were meant to have some effect. *Hermosillo v. State*, 903 S.W.2d 60, 69 (Tex.App.—Fort Worth 1995, writ ref'd). Further, we are to give words their ordinary meaning. TEX. GOV'T.CODE ANN. § 312.002(a) (Vernon 1988). If the Legislature intended for the County Chair to have the authority to omit a candidate's name from the ballot after delivery of the list, the prefatory phrase would read "A candidate's name must be omitted from the **ballot**." This distinction is significant in light of other provisions of the Code which outline the procedures for removing a candidate due to withdrawal, death or ineligibility.

### 3. Authority of County Chair with Regard to Withdrawal, Death or Ineligibility of Candidate

When a candidate seeks to withdraw from an election, he or she must make a written request to be omitted "from the ballot"; the request must be timely filed "with the appropriate authority".[4] TEX.ELEC.CODE ANN.

---

4. We recognize that in the event of an untimely request, the name may not be removed from the primary ballot. TEX.ELEC.CODE ANN. §§ 145.092, 145.094 (Vernon Supp.1996). Further, a candidate may die or be declared ineligible after the deadline for removing the name from the ballot. TEX.ELEC.CODE ANN. §§ 145.092, 145.094, 145.096

(Vernon Supp.1996). If the name of a deceased or ineligible candidate appears on the ballot, the votes cast for that candidate shall be counted. TEX.ELEC.CODE ANN. § 145.005(a) (Vernon 1986). However, if that candidate receives the votes required for election, the resulting vacancy will

§ 145.001 (Vernon 1986). For purposes of the primary election, the appropriate authority is "the authority with whom applications for a place on the ballot are required to be filed." TEX.ELEC.CODE ANN. § 145.093(a) (Vernon 1986). Here, the appropriate authority is Sutherland. Subsection (b) provides that if the appropriate authority as defined in subsection (a) is not responsible for having the official ballot prepared for the election, which is the case before us, then the receiving authority "shall certify the candidate's name in writing as a withdrawn candidate and promptly deliver the certification to the authority responsible for having the official ballot prepared." TEX.ELEC.CODE ANN. § 145.093(b) (Vernon 1986).[5] Thus, were that the situation, Sutherland would be required to certify the withdrawal of a candidate to Jamison and Jamison would omit the name from the ballot. Similarly, § 145.002(a) provides that if a candidate's name is to be omitted "from the ballot" because the candidate has died, the authority responsible for having the official ballot prepared shall omit the candidate's name from the ballot on receipt of reliable information of the death. TEX.ELEC.CODE ANN. § 145.002(a) (Vernon 1986). In this instance, Jamison would be the appropriate authority to remove the name from the ballot. As a result, Sutherland's and Jamison's construction creates needless conflict between § 172.029(d) and § 145.002(a). Lastly, in the event of a declaration of ineligibility, the authority making the declaration shall promptly certify in writing the declaration of ineligibility to the canvassing authority for the election. TEX.ELEC. CODE ANN. § 145.003(h) (Vernon Supp.1996). Who makes the declaration? Subsection (c) provides that a candidate in a primary election may be declared ineligible by "the authority with whom an application for a place on the ballot for the office sought by the candidate is required to be filed." TEX.ELEC. CODE ANN. § 145.003(c) (Vernon Supp.1996). Subsection (g) elevates the permissive language of subsection (c) to a mandatory duty:

When presented with an application for a place on the ballot or another public record containing information pertinent to a candidate's eligibility, the appropriate authority shall promptly review the record. If the authority determines that the record establishes ineligibility as provided by Subsection (f), the authority *shall* declare the candidate ineligible.

TEX.ELEC.CODE ANN. § 145.003(g) (Vernon Supp.1996) (emphasis added). It is clear that the Legislature has conferred specific authority for individuals involved with the electoral process to remove "from the ballot" the name of a candidate who timely withdraws, dies or is declared ineligible within certain defined time parameters. The County Chair is specifically authorized to omit "from the list" the name of a candidate who has filed a deficient application. There is no specific Legislative grant of authority to the County Chair to remove the name of a candidate who has filed a deficient application after the list of candidates has been delivered to the designated officials. Here, Sutherland explicitly stated to Jamison in his letter of February 2 that:

[I]t is my decision as Chair of the El Paso County Democratic Party to remove Mr. David Escobar's name *from the ballot,* as he does not qualify as a candidate.... (emphasis added).

We conclude that once the list of candidates has been delivered to the appropriate authorities, the County Chair cannot delete the name of a candidate from the ballot on the basis of a deficient application. Nor may the County Chair omit the name from the list once he has delivered the list.

### 4. Authority to Independently Act Subsequent to Certification

■ We recognize that our inquiry cannot yet end, because we must also factor § 141.034 into the equation. That section provides:

(a) An application for a place on the ballot may not be challenged for compliance with

---

be filled in the regular manner. TEX.ELEC.CODE ANN. § 145.005(b) (Vernon 1986).

5. In El Paso County, Jamison, as Director of El Paso County Elections Department, is charged with the responsibility of preparing the official ballot.

the applicable requirements as to form, content, and procedure after the day before the beginning of early voting by personal appearance for the election for which the application is made.

(b) This section does not apply to a determination of a candidate's eligibility.

TEX.ELEC.CODE ANN. § 141.034 (Vernon Supp.1996). This language indicates the intent of the Legislature that a challenge to the statutory requirements of form and content of the application is distinctly different and completely separate from a challenge to a candidate's eligibility, or to state it another way, these two challenges are electoral apples and oranges. With regard to eligibility of the candidate, the Legislature provided a specific administrative process for determination. *See* TEX.ELEC.CODE ANN. § 145.003 (Vernon Supp.1996). Section 141.032 details the method by which an official must determine the validity of the application in terms of its compliance with the requirements of the Election Code, while § 145.003 details the method by which a challenge is made to the eligibility of the candidate to hold office. *Sears v. Bayoud*, 786 S.W.2d 248, 257 (Tex. 1990) (Spears, J., dissenting); *see* TEX.ELEC. CODE ANN. §§ 141.032 (Vernon 1986 & Supp. 1996), 145.003 (Vernon Supp.1996).[6] Section 145.003(a) expressly states that "a candidate may be declared ineligible **only** as provided by this section."[7] TEX.ELEC.CODE ANN. § 145.003(a) (Vernon Supp.1996) (emphasis added). Section 141.032(f) specifically states that "[t]his section does not apply to a determination of a candidate's eligibility." TEX. ELEC.CODE ANN. § 141.032(f) (Vernon Supp. 1996). Accordingly, the statutory scheme delineates the duties of the County Chair into two parallel inquiries which connote differing responsibilities, differing Legislative grants of authority, and differing time tables, all of which emphasize that the declaration of ineli-

gibility and the rejection of an application are two entirely separate procedures.

We construe the duties of the County Chair as follows. Sutherland had a duty to inspect Escobar's application within five days of the filing of the application. TEX.ELEC. CODE ANN. § 141.032(b) (Vernon 1986). Had he done so, he certainly would have observed that the application on file lacked a signature. Subsection (d) of § 141.032 provided him an additional window in which to make his determination however. We construe Section 172.029(d) as closing that window of opportunity at the time that the County Chair delivers the list of candidates to the designated officials. When Sutherland failed to omit Escobar's name from the list before he delivered the list, he lost the Legislative authority to act unilaterally.

■ Our construction is bolstered by the fact that § 141.032 (pertaining to the County Chair's review of the application and notice to the candidate of noncompliance) does not apply to the determination of eligibility. Instead, the County Chair is accorded specific Legislative authority to challenge the eligibility of a candidate in the primary election at any time before the commencement of early voting by personal appearance. TEX.ELEC. CODE ANN. § 145.003(c) (Vernon Supp.1996). He is also vested with the authority to certify in writing to the canvassing authority the declaration of ineligibility, along with the duty to give prompt written notice to the candidate. TEX.ELEC.CODE ANN. § 145.003(g)–(h) (Vernon Supp.1996). This administrative remedy is the only procedure short of judicial action by which a candidate may be declared ineligible. TEX.ELEC.CODE ANN. § 145.003(a) (Vernon Supp.1996). There is no corresponding administrative remedy for defective or deficient applications. The County Chair is also accorded

---

6. Eligibility considerations frequently include whether a candidate possesses the requisite residency status or whether a judicial candidate has practiced law for the requisite period of time. *See Nixon v. Slagle*, 885 S.W.2d 658, 661 (Tex. App.—Tyler 1994, no writ) (discussing the residency requirement in terms of eligibility); *see also Sears*, 786 S.W.2d at 250–252 (discussing the duration of an attorney's admission to the State Bar of Texas in terms of eligibility).

7. Pursuant to TEX.ELEC.CODE ANN. § 145.003(f), a candidate may only be declared ineligible if the information on the application for a place on the ballot indicates on its face that the candidate is ineligible for the office (particularly pertinent to residency issues) or if the facts indicating that the candidate is ineligible are conclusively established by another public record (pertinent to whether an attorney has practiced for sufficient time to qualify as a judicial candidate).

Legislative authority to take certain actions upon the withdrawal of a candidate. TEX. ELEC.CODE ANN. § 145.093(b) (Vernon 1986). If the Election Code mandates that the County Chair remove a candidate's name from the ballot prior to certifying the list and then specifically confers authority for the County Chair to later act to declare a candidate ineligible, or to certify the withdrawal of a candidate, its silence as to the authority of the County Chair to remove a candidate from the ballot for defects in an application appears to us to be deliberate.

■ Accordingly, we conclude that § 141.034 implicates a judicial challenge brought by a contestant. This challenge may be made until the day before the commencement of early voting. During the application filing period and up to the delivery of the list of candidates, such a challenge can be, but not necessarily exclusively, made to the County Chair; however, once the County Chair's statutory duty and authority to omit certain candidate's names from the list of candidates terminates, and the list of candidates is delivered to the appropriate authority forum, it must be directed to a forum other than the County Chair.

### C. Available Remedies

■ While there is a specified administrative procedure for determining candidate eligibility TEX.ELEC.CODE ANN. § 145.003 (Vernon Supp.1996), there is no specific mechanism provided in the Election Code for a determination of the validity of an application. There are, however, general statutes that afford relief. As we have already noted, the Election Code provides for mandamus relief in the Supreme Court or the courts of appeals. *See* TEX.ELEC.CODE ANN. § 273.061 (Vernon 1986). In the event there are factual disputes to be resolved or other matters which may render mandamus inappropriate, the Election Code provides for injunctive relief. *See* TEX.ELEC.CODE ANN. § 273.081 (Vernon 1986). We therefore conclude that a challenge to the compliance of an application made after the County Chair has lost authority to act must either be made to an appellate court as an original proceeding in mandamus or to the county or district courts as an

application of injunctive relief. Both parties at oral argument conceded the availability of injunctive relief in this case.

While resort to the trial courts could be practically prohibitive given the close time proximity in most elections between delivery of the list of candidates and the start of early voting, the statutes appear to provide no other avenue of relief. The Legislature could have provided one had it so intended, but it did not.

### D. Summary

■ We find no language in the Election Code authorizing the County Chair to individually resolve factual disputes from sources other than public record, or otherwise adjudicate compliance of a candidate's application **after** the ten-day-period in which he or she must review and submit the list of candidates. Applying the plain language of the statute and giving the terms their ordinary meanings, we conclude that absent a specific Legislative grant of authority, the County Chair loses both the individual responsibility and the individual authority to accept or reject a candidate for a position on the ballot once he or she delivers his or her list of candidates to the county clerk, the state chair, and the secretary of state pursuant to TEX.ELEC.CODE ANN. § 172.029(c) (Vernon 1986). To permit otherwise would invite an unscrupulous County Chair to withhold removing an individual from a primary ballot, under similar circumstances, until the absolute last moment prior to the printing of the ballot, although any infirmity may well have been discovered during the initial ten-day-period. Imagine the outrage if a unscrupulous County Chair removed a potential candidate the day after the filing deadline, thus affording the candidate ample time to seek mandamus or injunctive relief, while the same County Chair withheld a challenge on another allegedly infirmed application until it became impracticable or impossible to secure comparable judicial relief. In the simplest of terms, democracy requires a fair and predictable electoral process. Nothing more, and certainly nothing less.

## IV. CONCLUSION

In limiting the duration of the County Chair's authority to complete his or her duties, we do not intend to trivialize those duties and authority. As this Court made clear in *Bejarano*, an election official's duty to review applications and submit a correct list of candidates is vital to the electoral process. *See Bejarano*, 899 S.W.2d at 350. These duties must be performed with care and competence. An election official's failure to perform his or her duty will subject the official to mandamus. *Id.* This Court has mandamus power to direct the official to correct his or her mistake, or failure to act, committed during the pendency of his or her authority. *See id.*

In *Bejarano*, we faced an official who failed to do her duty, and we determined that we had jurisdiction to require her to de-certify an improperly certified ballot.[8] In this case, we have an official attempting, on his own, to correct a perceived mistake after his authority to do so has expired. We can make no comment on whether Escobar's application complies with the requirements of the election code. If Sutherland now asserts noncompliance, we are constrained to find that he should have determined compliance while he had the duty and authority to do so, and any action he took after he delivered the list of candidates was without authority. Accordingly, we find that Sutherland's order removing Escobar from the ballot was without authority, is null and void and of no effect. We conditionally grant the writ of mandamus and order the El Paso County Democratic Chair to replace the name of David Escobar on the ballot for the El Paso County Democratic Primary, contingent upon Escobar tendering the required filing fee to El Paso County Democratic Chair, no later than 5:00 p.m., MST, February 16, 1996. The writ will not issue unless Sutherland fails to withdraw his order removing Escobar from the ballot.

Because of the proximity of the date for commencement of absentee balloting, we will

not entertain a motion for rehearing. *See* TEX.R.APP.P. 190(a).

---

8. In the end, we determined that mandamus relief was mooted by the commencement of early voting. *Bejarano*, 899 S.W.2d at 352.