Petition for Writ of Mandamus Denied and Plurality, Concurring, and
Dissenting Opinions filed January 18, 2006









Petition for Writ of Mandamus Denied
and Plurality, Concurring, and Dissenting Opinions filed January 18, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-06-00035-CV

____________

 

GLORY HOPKINS, Relator

 

 



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 



 

C O N C U R R I N G   O P I N I O N

 

This is relator Glory Hopkins= second petition for writ of mandamus
filed in this Court.  Although this court
is not required to issue an opinion when denying mandamus relief, it may do
so.  See Tex. R. App. P. 52.8(d). 
This case presents significant factual differences from those presented
in other cases decided under the relevant statutes, and the novel facts in this
case may recur in future cases. 
Concluding that it is preferable to explain the basis for denying mandamus
relief, I write separately to address the application of the law to these
unique facts.








I. 
Factual Background

Eric Thode  is the
chair of the Republican Party of Fort Bend County.  According to his affidavit, Thode distributes
a weekly newsletter by e-mail to approximately 1,700 subscribers.  Glory Hopkins, the District Clerk of Fort
Bend County and a prospective candidate for reelection, does not subscribe to
the newsletter; however, Thode asserts that he has sent e-mail communications
to Hopkins through Thelma Hurd, who Thode states is Hopkins=s designee for
e-mail communications.  Hopkins=s campaign manager,
Mandi Bronsell, subscribes to this weekly newsletter.  Hopkins does not contend that Bronsell received
communications from ThodeCsuch as the three newsletters at issue hereCas Hopkins=s agent, or that Hopkins instructed
Thode to send e-mail communications to her through Bronsell.  

Three of these weekly newsletters, dated
November 21, 2005, November 28, 2005, and December 5, 2005, stated in pertinent
part as follows:

FILING FOR PRECINCT CHAIR

If you would like to serve as
Precinct Chair for your election precinct for the 2006B 08 cycle, please download a copy
of the filing form, fill it out, have it notarized and return it to me.  The link to the form is here: [hyperlink
omitted].

You can hand deliver the form to me
at our next event, which is the Republican Party of Fort Bend County Christmas
Party on Thursday, December 8 at Southern National Bank from 7:00 to 9:00
pm.  Or, you can mail the form back to me
at:

Republican
Party of Fort Bend County

P.O. Box
1987 

Sugar Land, Texas 77487-1987

If you would like to send it
CERTIFIED mail, please mail your form to:

Mr. Eric
Thode 

Universal
Compression

4444
Brittmoore

Houston, Texas 77487-1987

The form may also be faxed to me
with a cover sheet to [fax number omitted].

The form must be returned to me by
January 2, 2006 at 6:00 pm.








The first address,
that of the Republican Party of Fort Bend County, is stated correctly.  The second address is Thode=s business address.  The zip code on the Brittmoore address is
misstated; it incorrectly repeats the zip code to the Sugar Land post office
box of the Republican Party of Fort Bend County, rather than the Houston zip
code of Thode=s business.

Importantly, the  newsletters at issue did not state that
candidate applications for any position other than that of precinct chair would
be accepted at Thode=s business address.[1]  Nor did the newsletters state that filing
fees or petitions would be accepted at Thode=s business address.  Previous newsletters sent on November 7, 2005
and November 14, 2005 contained a similar announcement regarding filing for
precinct chair, but omitted mention of filing the application at Thode=s business address.   

In the weeks following the filing
deadline for precinct chair, the newsletters did not state that applications
for precinct chair or for any other position would be accepted at Thode=s business address.  A subsequent newsletter sent on December 12,
2005 correctly stated the address of the Republican Party of Fort Bend County
as the address where checks could be sent in connection with a fundraiser.  The same newsletter listed ACurrent Filings for the March 2006
Republican Party Primary.@  Hopkins is not listed
among the candidates who had filed to appear on the ballot in the primary; her
opponent for the office of district clerk is listed.  The newsletter reminds prospective candidates
that Athe filing deadline is Monday,
January 2nd at 6:00 pm.  If you need
information, please contact chairman Eric Thode at [phone number omitted].@ 
Newsletters dated December 19, 2005 and January 2, 2006 again correctly
stated the address of the Republican Party of Fort Bend County as the address
where checks could be sent in connection with a fundraiser, though they did not
revisit the issue of filing for candidacy. 








            On November 17, 2005, Thode sent an
e-mail to elected Republican Fort Bend County public officials and persons who
had expressed an intent to run for office, reminding them that the filing
period to be included in the election would end on January 2, 2006 at 6:00
pm.  The e-mail was sent to Hurd, as
Hopkins=s designee.[2]  In the e-mail, Thode listed five methods to
deliver the filing materials as follows:

1.         Hand delivery to Thode at the Republican Christmas Party on
December 8;

2.         Delivery to his business office on Brittmoore Road (this
instruction included directions, Thode=s office
telephone number and cellular phone number);

3.         Delivery via certified or regular mail to Thode=s business office (this instruction included the full
and correct address);

4.         Delivery via regular mail to the Republican Party of Fort
Bend County (this instruction included the full and correct address); or

5.         ASchedule a time to deliver to me in some other
fashion.@ (For this instruction, too, Thode listed his office
and cellular telephone numbers).

 








Thode states in his affidavit that
Hopkins made an appointment to meet Thode on December 21, 2005 to deliver her
completed election application and filing fee. 
This was one of the options listed in Thode=s e-mail to elected officials and
prospective candidates whose identities were known.  Nevertheless, Hopkins did not produce her
application or filing fee at the meeting, but she does not dispute that the
meeting took place as alleged.

On December 27,
2005, Hopkins began the process of mailing her election application and filing
fee by certified, first class mail.  She
addressed the envelope herself, using the address that her campaign treasurer,
Libby King had provided to her.  King had
obtained the party address from Hopkins=s campaign
manager, Bronsell.  Bronsell had
forwarded the incorrect listing of Thode=s business address
to King, but had not included the lines above the address indicating that the
address was for AFILING FOR PRECINCT CHAIR.@  

Hopkins left the envelope containing
her election application and filing fee at Fort Bend Postal for mailing, and
the owner of the company, Jesse Mata, noticed that the street address on the
envelope was a Houston address, while the zip code 77487 was a Sugar Land,
Texas zip code.  He testified by
affidavit that Abecause all Houston zip codes start with >770_ _,= I assumed that Ms. Hopkins intended
to write >77087,=@ and so changed the zip code on the
certified mailing green card from the Sugar Land zip code from 77487 to
77087.  He further testified that he may
have changed the zip code on the envelope itself before mailing it (Aeither I or an employee of the United
States Postal Service made that change to reflect the Certified Mailing Green
Card@). 
Mata states that he would not have altered the zip code(s) if the
address and the zip code had matched. 
Hopkins picked up the certified mail receipt for the letter on December
29, 2005.[3]








Approximately twenty minutes after
the statutory filing deadline expired on January 2, 2006, Thode
notified Hopkins=s treasurer, King, that Hopkins=s candidacy papers had not been
received.  By tracking the certified mail
receipt, Hopkins subsequently learned that on December 29, 2005, the United
States Post Office had declared the envelope undeliverable, and was returning
it to her.[4]  A copy of Hopkins=s original application for candidacy
and a new check for the filing fee were hand-delivered to the secretary of the
Fort Bend Republican Party on January 3, 2006; however, Thode notified Hopkins
that he could not certify her candidacy to the secretary of state because her
filing was untimely.  

Hopkins therefore asks this court to
issue a writ of mandamus, compelling Thode, as the county chair of the
Republican Party, to include her name as a candidate for District Clerk for
Fort Bend County.  Thode does not oppose
the relief requested, while her opponent, Annie Rebecca Elliott, opposes the
petition for writ of mandamus.  The
Elections Administrator for Fort Bend County states that the requested relief
would not delay or impair the election process Aif [he is] informed by January 25,
2006 of whether or not Glory Hopkins will be on the ballot.@

II. 
Issues

Hopkins contends that she is entitled
to equitable relief compelling Thode to enter her name on the general primary
ballot because Thode allegedly violated a statutory duty Awhen he provided the wrong address
for candidates to file applications by certified mail.@ 

 








III.  Analysis

A prospective candidate
for a county office must timely file his or her application with the county chair or
the secretary, if any, of the county executive committee. 
Tex. Elec. Code Ann. '' 172.021(3), 172.022(a)(2)
(Vernon 2003).  An application for a
place on the general primary election ballot must be filed not later than 6:00
p.m. on January 2 in the primary election year. 
Id. at ' 172.023(a).  Here, there is no question that relator=s application
failed to satisfy this requirement.

Statutory requirements concerning
candidacy for political office are mandatory and are to be strictly enforced.  Wallace v. Howell, 707 S.W.2d 876, 877
(Tex. 1986).  If a prospective
candidate=s application does not comply with the
Code=s requirements,
the party chair must reject the application. 
Tex. Elec. Code Ann. ' 141.032(e)
(Vernon 2003); see also id. at '172.029(d) (county
chair must omit the prospective candidate=s name from the
list submitted to the Secretary of State). 
No party official can alter the filing deadline.  Painter v. Shaner, 667 S.W.2d 123, 125
(Tex. 1984) (orig. proceeding).  Party
chair Thode therefore acted in accordance with the Election Code when he
declined to accept relator=s untimely
application.








This, of course,
does not conclude the analysis.  A court
can nevertheless provide an equitable remedy after the expiration of statutory
deadlines when necessary to correct a party official=s violation of a
duty imposed by law.  See, e.g., Davis
v. Taylor, 930 S.W.2d 581, 584 (Tex. 1996) (granting mandamus directing
that prospective candidate be placed on ballot where county chair missed
deadline to certify candidate to the secretary of state); Painter v. Shaner,
667 S.W.2d 123, 125 (Tex. 1984) (granting mandamus to allow late filing of
application where the prospective candidate was ready to file on the filing
deadline, but found the county chair=s office was
locked); see also Tex. Elec. Code Ann. ' 273.061 (Vernon 2003) (AThe supreme court or a court of
appeals may issue a writ of mandamus to compel the performance of any duty
imposed by law in connection with the holding of an election or a political
party convention, regardless of whether the person responsible for performing
the duty is a public officer@).  We therefore must
determine if the county chair violated a legal duty by misstating his business
address in the newsletter when enumerating ways in which a prospective
candidate for precinct chair could file his or her application.

The Election Code
specifically authorizes prospective candidates to submit their applications by
mail.  Tex. Elec. Code Ann. ' 1.007(c) (Vernon
2003).  In addition, Athe authority to
whom a delivery, submission, or filing is required [by the Election Code] to be
made may accept the document or paper at a place other than the authority's
usual place for conducting official business.@  Id. at ' 1.007(b).  Reading these two provisions together, it is
clear that the county chair may accept mailed candidacy documents and filing
fees at a location other than the usual place of business. 

Regardless of the
method of delivery, a prospective candidate's application for a place on the
ballot must be timely filed.  See id. at ' 141.031(3)
(emphasis added).  An application filed
by mail is considered to be filed at the time of its receipt by the appropriate
authority. See id. at ' 172.021(c).  An application for a place on the general
primary election ballot must be filed not later than 6:00 p.m. on
January 2 in the primary election year.  See ' 172.023(a) (Vernon
2003) (emphasis added); see also In re Gamble, 71 S.W.3d 313, 318
(Tex. 2002) (holding that Athe candidate has
a duty to file a compliant application before the filing deadline@); Escobar v. Sutherland, 917 S.W.2d 399, 404 (Tex. App.CEl Paso 1996, no writ) (stating that Ait is the
candidate who is primarily responsible and accountable for properly completing
and timely filing a proper application for a place on the ballot@).  If the word Amust@ appears in the
Election Code then that section requires mandatory compliance. Cohen v.
Strake, 743 S.W.2d 366, 368 (Tex. App.CHouston [14th
Dist.] 1988, orig. proceeding).  








When construing a
statute, we ascertain the legislature=s intent from the
plain meaning of the actual language used. 
Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).  When the legislature employs a term in one
part of a statute and excludes it in another, we presume the legislature had a
reason for doing so.  Fireman=s Fund County Mut.
Ins. Co. v. Hidi, 13 S.W.3d 767, 769 (Tex. 2000).  We do not invent a remedy the legislature
could have, but did not, specify.  State
v. Roland, 973 S.W.2d 665, 666 (Tex. 1998). 
As relevant to this case, it is significant that the Election Code dates
the time of filing some documents from the date when the material is
mailed.  See Tex. Elec.
Code Ann. ' 1.008 (Vernon
2003).  In contrast, certain other
documents are not considered filed until they are actually received by the
authority or placed in the authority=s mailbox.  See id. at ' 1.009.  In the case of a prospective candidate=s application and
filing fee, the legislature has expressly chosen not to follow the Amailbox rule,@ but instead to
date the time of filing from the time at which the materials are actually
received by the appropriate authority.  See id. at ' 172.021(c).

By dating the time
of filing from the time of the application=s receipt, rather
than from the day the materials were mailed, the legislature placed the risk of
non-delivery on the prospective candidate who chooses to file his or her
candidacy documents by mail.  Timely
filing Ais not the County Chair=s responsibility, it is not the
Election Administrator=s responsibility, and it certainly is not the responsibility
of the voting public who wish to someday cast their vote for the
candidate.  This accountability is not
for the intentions but for the deed.@ 
Escobar, 917 S.W.2d at 404.

If we were to
accept Hopkins=s arguments and consider her application
timely filed simply because she intended the materials to be mailed to Thode=s business
address, in essence we would change the Legislature=s allocation of
the risk of non-delivery to the prospective candidate. 








We recognize,
however, that despite the mandatory language of the statute, Aunder limited
circumstances, statutory deadlines may be extended to correct an official=s violation of a
statutory duty.@  In
re Gamble, 71 S.W.3d at 318.  The
facts of this case do not present such a circumstance.  To be entitled to such equitable relief,
Hopkins must show that Thode=s violation of a
statutory duty caused her application and filing fee to be untimely.  In order to meet this requirement, Hopkins
argues that Thode had a statutory duty to provide a correct address for
candidates to file their applications by mail, that he violated that duty in
providing an incorrect address, that she relied upon the incorrect address, and
that this caused her filing to be untimely. 
Hopkins does not cite to any provision in the Election Code imposing
this duty; rather, she invites this court to impose such a duty.  In support of this argument, Hopkins cites Painter
v. Shaner, 667 S.W.2d 123 (Tex. 1984). 
In Painter, the candidate went to the office on the last filing
day in order to file his candidacy documents, and found the office locked, thus
preventing his timely filing.  See
Painter, 667 S.W.2d at 124.  There,
the Texas Supreme Court found that because the candidate had a legal right to
file an application until 6:00 pm on the deadline date, the chairman had a
concomitant legal duty  to accept
applications until 6:00 pm on the deadline date.  Id. at 125.  Painter demonstrates an obvious parity
between the legal right, expressly stated by the legislature, and the
imposition of a duty essential to the exercise of that right.








The same situation
is not presented on these facts for several reasons.  First, the only express duty imposed on Thode
by the Election Code is to accept applications at Athe authority=s usual place for
conducting official business,@ i.e., the address
of Republican Party of Fort Bend County. 
See Tex. Elec. Code Ann. ' 1.008(a) (Vernon 2003).  No one argues that Thode misstated the
address of the offices of the Republican Party.[5]  Though Thode was empowered to do so, he was
not required to accept applications at a place other than the Ausual place for
conducting official business.@  See ' 1.008(b) (AThe authority to
whom a delivery, submission, or filing is required by this code to be made
may accept the document or paper at a place other than the authority's
usual place for conducting official business@) (emphasis
added).  See also Tex. Gov=t Code Ann. ' 311.016(1) (Vernon 2005) (when used in a
statute, the word A>may= creates
discretionary authority or grants permission or a power@).[6]  Thode did exercise this discretionary
authority by arranging an alternate means of accepting Hopkins=s application at a
personal meeting on December 21, 2005, though he was not required to do
so.  Hopkins failed to produce her
application or filing fee at the meeting, and she also, was not required to do
so.  She was only required to file her
application and pay the filing fee by 6:00 pm on January 2, 2006.

Hopkins
nevertheless suggests that, having stated an address where he would accept
applications for precinct chair by certified mail in three electronic
newsletters in late November and early December, Thode had a duty to state the
address correctly.  However, even if one
were to accept the argument that stating any address to subscribers created a
duty to state the address correctly, there would still be no duty to state a
correct address to non-subscribers. 
Moreover, this particular information was directed only to prospective
candidates for precinct chair.  Hopkins
was neither a subscriber nor a prospective candidate for precinct chair.








Additionally,
Thode=s discretionary
authority to state an address at which he would receive some applications would
not be converted into a duty simply because Hopkins (or more accurately,
Bronsell) chose to rely on that address for a purpose for which it was
manifestly not intended.  Moreover, even
if such a duty could have arisen, and even if the duty was violated, the
violation was corrected by (a) Thode=s personal meeting
with Hopkins to accept her materials by personal delivery, (b) his review of
her filing options with her at the meeting, (c) the e-mail directed
specifically to elected officials and candidates, correctly stating five
methods of delivery, and (d) subsequent newsletters prior to Hopkins=s mailing that
made no representations at all about accepting applications at any alternate
place.

Finally, there is
a lack of causation.  Even if we were to
accept the argument that Thode had a duty to correctly state his business
address in the three newsletters at issue, the failure to state the address
correctly would have harmed only prospective candidates for precinct chair
offices.  None of the newsletters
represented that Thode would receive applications for any office other than the
party office of precinct chair at his personal place of business.  Perhaps even more importantly, the
newsletters at issue stated only that applications would be accepted at
Thode=s business
address; they did not represent that filing fees would be accepted at that
address.  A filing fee is a necessary
component of the candidacy materials for the public office of district clerk;[7]
a filing fee is not required of candidates for the party office of precinct
chair.[8]  In fact, all of the newsletters require money
to be sent to the offices of Republican Party of Fort Bend County, not to Thode=s business
address.[9]  Accordingly, there was no indication that a
filing for district clerk could be completed at Thode=s business
address.  Nevertheless, Hopkins mailed
her filing fee as well as her application to this address, though she does not
contend that there was ever any representation that filing fees would be
accepted there.[10]









IV.  Conclusion

Because of the
many material fact issues presented, mandamus is not authorized; because of the
facts that are not disputed, mandamus is not justified.  While the outcome to Hopkins may be harsh,
the requirements of the Election Code and existing precedent do not allow us to
grant equitable relief.  Both candidates
and voters have a common interest in predictable enforcement of the Election
Code and the orderly progress of elections. 
The legislature has unambiguously placed the risk of untimely delivery
or nondelivery on the candidate who mails his or her application and filing
fee, and the facts presented neither justify nor authorize a departure from
that allocation.  

The dissent
concludes that recent cases such as In re Gamble and In re Bell have
moved away from strict statutory construction to a more fluid concept of
achieving just and reasonable results. 
Nevertheless, justice and reasonableness are not judged solely from the
standpoint of the aggrieved candidate. 
For example, Gamble recognizes that the legislature Ahas specifically
called upon the courts to exercise their equitable powers to resolve election
code violations.@  In
re Gamble, 71 S.W.3d 313, 317 (Tex. 2002) (emphasis added).  Gamble also recognizes that A[c]ertainly, the
candidate has a duty to file a compliant application before the filing
deadline.@  Id.
at 318 (emphasis added).  Accordingly,
existing case law continues to weigh factors such as the timeliness of the
application and the existence of an election code violation, neither of which
is present here.  Courts may additionally
consider whether equitable relief would frustrate the legislature=s intent in
enacting a statute.  See In re Bell,
91 S.W.3d 784, 788 (Tex. 2002).  Here,
granting the requested relief would frustrate the legislature=s intent to place
the risk of untimely receipt of mailed documents on the prospective
candidate.  Finally, though this court
may exercise its equitable powers to resolve election code violations, those
powers must themselves be exercised in an equitable manner.  There is no authority for the proposition
that a prospective candidate=s incumbency or
tenure is a factor that may even be considered in Abalancing
equities;@ were it otherwise, the balance would
always begin with a weight on the scale of the incumbentCa result that is
neither just nor reasonable.








For the foregoing
reasons, I respectfully concur.

 

 

 

/s/      Eva M. Guzman

Justice

 

Petition
denied and Plurality, Concurring, and Dissenting Opinions filed
January 18, 2006.

 

Panel
consists of Justices Fowler, Edelman, and Guzman.  (Edelman, J., plurality.)  (Fowler, J., dissenting.)

 

 

 











[1]  Unlike the
office of district clerk, which is a public office for which voters of any
party may vote,  and which represents all
of the constituents in the county, a precinct chair is an intra-party official,
and represents only members of the same party. 
Prospective candidates for precinct chair are subject to a different
filing schedule than prospective candidates for district clerk.





[2]  Hopkins states
that it is Airrelevant that a mass e-mail/newsletter containing
the correct zip code may have been sent to Ms. Hopkins=s secretary.@  Hopkins denies that her secretary was her
designee for e-mail communications, but does not deny that Hurd was her
designee.  However, Hopkins=s secretary is not identified by name, and no one has
represented that Hurd is Hopkins=s
secretary.  It may be that Hurd and
Hopkins=s secretary are the same person.  If so, then Hopkins may be denying that Hurd
was her designee for e-mail communications from the Republican Party of Fort
Bend County.  If Hopkins is denying that
contention, then the existence of this material fact issue (i.e., whether, as
Thode testified, Hopkins=s agent received correct filing instructions
applicable to incumbent public officials and prospective candidates) would
prevent mandamus relief, for we may not resolve factual disputes in a mandamus proceeding.  See In re Jones, 978 S.W.2d 648, 653 (Tex. App.CAmarillo 1998, orig. proceeding); Escobar
v. Sutherland, 917 S.W.2d 399, 403 (Tex. App.CEl Paso 1996, orig. proceeding).  If Hurd is
not Hopkins=s secretary, then we have no denial of Thode=s testimony that Hurd is Hopkins=s designee.  In
that event, Hopkins=s argument cuts both ways: if it is Hopkins=s position that her agent=s receipt of the correct address for filing the
application for the office for which she is actually applying is irrelevant,
then it stands to reason that her agent=s
receipt of an incorrect address for filing an application for an office for
which she is not applying is also irrelevant.





[3]  Though not
discussed by any party, the zip code shown on the certified mail receipt was
altered in the same manner as the Agreen
card@ and the envelope itself.  





[4]  Although the
United States Post Office declared the envelope Aundeliverable@ on Thursday, December 29, 2005, no evidence has been
produced to show that the envelope would have been received at Thode=s business address by 6:00 pm on Monday, January 2,
2006, if it had been correctly addressed. 
This is yet another fact issue which would preclude mandamus, for even
if we were to accept that the statements in the newsletter caused Hopkins to
misaddress the letter, which then caused Mata to alter the address, there is no
evidence that the correctly addressed letter would have been delivered prior to
the deadline.  While Mata and King state
the AUnited States Postal Service website, on January 4,
2006, stated that Ms. Hopkins=s certified mail would have been delivered if properly
addressed on December 29, 2005,@ the printout of the information on the website says
only AStatus: Return to Sender.  Your item was returned to the sender on
December 29, 2005 because it could not be delivered as addressed.@  While it took
the Post Office just two days to determine that the envelope was undeliverable
as addressed, physical return of the envelope to Hopkins took another six
days.  She received the envelope back on
January 4, 2006, eight days after originally mailing it.





[5]  In light of
the fact that no one claims that Bronsell, Hopkins=s campaign manager, was her designee for receipt of
e-mail communications, there is in fact no contention that Thode made any
representations to Hopkins at all regarding the address where her application
could mailed.  All of Hopkins=s contentions regarding mailing addresses are
concerned only with representations made in an e-mail newsletter, and Hopkins
does not subscribe to the newsletter.





[6]  The Code Construction Act (Tex. Gov. Code Ann. '' 311.001 to 311.034 (Vernon 2005)) applies to the
construction of each provision in the Election Code, except as otherwise
expressly provided in the Code.  Tex.
Elec. Code Ann. ' 1.003(a) (Vernon 2003).





[7]  Tex. Elec. Code Ann. ' 172.024(a)(14) (Vernon 2003).





[8]  Tex. Elec. Code Ann. ' 172.021(b) (Vernon 2003).





[9]  See discussion
of fundraising checks in the Facts section.





[10]  To the extent
that Hopkins implies that she reasonably relied upon King=s representations of 
Bronsell=s representations of Thode=s representations concerning the invalid address, such
an argument would itself preclude mandamus relief, either because the
reasonableness of such reliance creates an issue of fact or because such
reliance would be unreasonable as a matter of law.  Moreover, the application of tort concepts of
reasonable reliance have not been argued to apply to the issues regarding
construction of the Election Code presented here.