**In re The Honorable Brent GAMBLE, Relator.**

No. 02–0104.

Supreme Court of Texas.

Argued Feb. 11, 2002.

Decided Feb. 19, 2002.

Stephen G. Tipps, Amy Douthitt Maddux, Baker & Botts, Houston, for relator.

Kathy Haigler, Director, Harris County Republican Party, Michael B. Charlton, Law Office of Michael B. Charlton, Houston, E. Dale Robertson, Juan A. Magallanes, Magallanes Hinojosa & Mancias, Brownsville, for respondent.

Justice ENOCH delivered the Court's opinion joined by Justice HECHT, Justice OWEN, and Justice RODRIGUEZ, and joined by Chief Justice PHILLIPS except for Part II B.

Brent Gamble, presiding judge of the 270th District Court in Harris County and candidate for reelection, asks this Court to order the Fourteenth Court of Appeals to vacate its conditional writ of mandamus that compels election officials to omit his name from the Republican primary ballot.[1] Although we disagree with the court of appeals' construction of the Election Code, we do agree Judge Gamble failed in the trial court to establish his entitlement to be on that primary ballot. As a result, the court of appeals was correct in ordering his name off the ballot. Accordingly, we deny this petition for writ of mandamus. But our reasons differ from the court of appeals.

I

On December 19, 2001, Judge Gamble filed his application to have his name placed on the Republican primary ballot. In that application, he identified the office sought as "Judge, *190*th Civil Dist. Court." Yet the petitions accompanying his application identified "District Judge, *270*th Judicial District" as the elected office he sought. Initially, Judge Gamble was placed on the candidate list as a candidate for the 270th District Court. But on January 3, 2002, the day after the filing deadline, Kathy Haigler, Harris County Republican Party Primary Director, notified Judge Gamble that she planned to remove his name from the party's candidate list because his application and his petitions did not match up as required by the Election Code.

On January 9, 2002, Judge Gamble filed a petition for injunctive relief in the 55th District Court in Harris County and sought a temporary restraining order against both Haigler and the Harris County Republican Party Secretary, Iris Manes.[2] He ostensibly sought only to "prohibit" the party officials from removing his name, but the relief he sought was

---

1. *See In re Triantaphyllis,* 68 S.W.3d 861 (Tex. App.-Houston [14th Dist.], orig. proceeding).

2. *See* TEX. ELEC.CODE § 273.081.

to require the officials to submit his name as a candidate for the 270th District Court on the list of candidates being certified to the Texas Secretary of State's office. His supporting affidavits showed that his political consultant prepared the application form, and that she mistakenly filled in "190th Civil Dist. Court" after completing an application for another client who held that office. Although Judge Gamble signed and swore to the truth of the application, he claims that he did not notice that the wrong court had been designated.

The trial court granted immediate relief. It ordered the secretary and primary director of the Harris County Republican Party to "refrain from omitting" Judge Gamble's name as a candidate for judge of the 270th District Court from the list of candidates to be submitted to the Secretary of State and others by January 12, 2002, under section 172.029 of the Election Code. The court further ordered the party officials to "refrain from preventing" Judge Gamble from correcting his application. And as it is required to do, the trial court set the merits of Judge Gamble's claims for a temporary injunction hearing on January 18, 2002.[3]

Judge Gamble promptly filed a corrected application and the Harris County Republican Party chair included him as a candidate for judge of the 270th District Court on the list of candidates delivered to the secretary of state. After Judge Gamble was added to the list, he nonsuited his petition rather than proceed to a merits consideration at the January 18 temporary injunction hearing.

Tasso Triantaphyllis, the Democratic candidate for judge of the 270th District Court, attempted to intervene, but Judge Gamble had already taken his nonsuit.

Mr. Triantaphyllis also filed for mandamus relief in the Fourteenth Court of Appeals on January 18, asking the court to direct Jared Woodfill, Harris County Republican Party Chair, as well as other party officials, to remove Judge Gamble from the Republican primary ballot because of defects in his original application.

The court of appeals agreed that the original application was defective and concluded that Judge Gamble had no right to amend it after the January 2 filing deadline. The court further concluded that the party chair had a ministerial duty to omit Judge Gamble from the list of candidates certified for the primary election once he discovered the deficiency in Judge Gamble's application. The court conditionally issued the writ, ordering the election officials to remove Judge Gamble from the list of candidates, thus omitting him from the 2002 Republican Party primary ballot.

II

Here, Judge Gamble complains that the court of appeals erred in its construction of the Election Code and abused its discretion in issuing the conditional writ that removes him from the primary ballot. His argument relies on sections 141.032 and 273.081 of the Election Code. Section 141.032(a) provides that a party official "shall review the application to determine whether it complies with the requirements as to form, content, and procedure."[4] This review is to be completed within five days after the application is filed unless the application is accompanied by a petition.[5] If an application is accompanied by a petition, as was the case with Judge Gamble's application, the "review shall be completed as soon as practicable after the

---

3. Tex.R. Civ. P. 680.

4. Tex. Elec.Code § 141.032(a).

5. *Id.* § 141.032(b), (c).

date" it's filed.[6] If an application is defective, the election official must reject it and notify the candidate immediately in writing of the reason for the rejection.[7]

Judge Gamble argues that had party officials promptly notified him that his application and petitions were in conflict, as was their duty under section 141.032, he would have quickly remedied the error by amending the application to reflect his desire to be a candidate for the 270th District Court. He also argues that he could have corrected the error before the January 2 deadline because he had filed his application on December 19, well in advance of the deadline. Judge Gamble submits that because the party officials failed to notify him of the defect until January 3 and, therefore, prevented him from curing the defect before the filing deadline, he is entitled to injunctive relief under section 273.081, which provides:

> A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring.[8]

 A request for injunctive relief invokes a court's equity jurisdiction.[9] As is evident, the Legislature has specifically called upon the courts to exercise their equitable powers to resolve election code violations. And when exercising such jurisdiction, a court must, among other things, balance competing equities.[10] Thus, the provision for injunctive relief in section 273.081 of Election Code incorporates these principles which, in turn, control the remedy.

Judge Gamble concludes that one remedy a candidate may obtain under this section is a reasonable extension of time beyond the January 2 deadline to cure a defective application which could have been corrected before the deadline but for the neglect of the party officials to act. Judge Gamble says that this Court has previously recognized remedies for candidates after the expiration of statutory deadlines when necessary to correct a party official's statutory violation. We note, though, that in those cases, the candidates were not at fault as Judge Gamble was here.[11]

The court of appeals in this case reasoned that when the candidate is at fault, the candidate should bear the ultimate responsibility for the error even though a party official shared responsibility for not catching the mistake before the filing deadline.[12] The court concluded that "after the filing deadline passed, Judge Gamble had no right, equitable or otherwise, to amend his application to correct the designation of the office he sought." [13]

### A

 As a general proposition, a candidate must bear ultimate responsibility for

6. *Id.* § 141.032(c).

7. *Id.* § 141.032(e).

8. Tex. Elec.Code § 273.081.

9. *Ex Parte Hughes,* 133 Tex. 505, 129 S.W.2d 270, 273 (1939).

10. See *Storey v. Central Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950).

11. See *Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984) (granting mandamus to allow late filing of application when county chair's office was locked); *cf. Davis v. Taylor,* 930 S.W.2d 581, 583 (Tex.1996) (granting mandamus directing that candidate be placed on ballot even though county chair missed deadline to certify candidate to secretary of state).

12. *Triantaphyllis,* 68 S.W.3d at 866–67.

13. *Id.* at 869.

his or her error. But we disagree that a candidate's fault automatically precludes his or her right to seek equitable relief. Certainly, the candidate has a duty to file a compliant application before the filing deadline.[14] But likewise, party officials have a duty to review the application and promptly notify the candidate when the application does not comply.[15]

While section 141.032 is indisputably designed to assure that candidates are properly qualified to be nominated as a party's candidate for the general election, that is not the only reason for the provision. This section also serves as a safety net for candidates who file their applications early in the filing period, assuring that individuals willing to commit to public service will receive the assistance of party officials in complying with the myriad and technical requirements for becoming a party candidate. There would be no purpose to the duty to notify the prospective candidate of defects in his or her application if the intent was not to allow an opportunity to cure those defects, particularly if the defects can be corrected before the filing deadline.[16] Thus, a party official's failure to follow the application review and notice requirements of section 141.032 in a timely manner is also significant and is a consideration for a court called upon to hear a candidate's claim for equitable relief. To be sure, the candidate's own fault is a consideration when weighing the right to equitable relief, but mistakes on an application are not an absolute bar to equitable relief.

In the end, a court's power to fashion equitable relief in an election case is not unrestrained. While a court may order equitable relief from a statutory deadline, its action is constrained by the election schedule itself. Generally, courts will not exercise equitable powers when their exercise may delay the election.[17] Further, while extending the statutory deadline is one example of equitable relief, it is an extraordinary departure from the careful planning of the legislature, and not to be invoked lightly.

### B

In this case, Judge Gamble contends that the only defect in the application is a clerical one, appearing on its face that party officials should have noticed and called to his attention well before the filing deadline expired. Such facts, if true, state a claim for equitable relief. Mr. Triantaphyllis may, of course, disagree with Judge Gamble's allegations or have other evidence which demonstrates that equitable relief should not be granted. Whether Judge Gamble is entitled to equitable relief, therefore, can only be decided after a hearing on the merits where interested parties have an opportunity to be heard.

### III

Although we agree that equitable remedies may be fashioned and that, under limited circumstances, statutory deadlines may be extended to correct an official's violation of a statutory duty, we have no basis to grant the relief requested by Judge Gamble in this case. The only order supporting Judge Gamble's entitle-

---

**14.** *See* Tex. Elec. Code §§ 141.031, 172.023.

**15.** *Id.* § 141.032.

**16.** *See Escobar v. Sutherland,* 917 S.W.2d 399, 406 (Tex.App.-El Paso 1996, orig. proceeding).

**17.** *See Blum v. Lanier,* 997 S.W.2d 259, 263 (Tex.1999) (injunction that delays election is improper).

ment to equitable relief is a temporary restraining order which is not a decision on the merits. It issued here without opposing arguments or challenge, and while we are concerned with its use as a tool for affirmative relief in this case, that is not the focus of our attention. Rather as a matter of law, the order, because it was a temporary restraining order, provided only interim relief.[18] It got Judge Gamble's name on the list certified to the secretary of state, but regardless, it could not assure him a place on the ballot. That's because he did not pursue the matter to a determination on the merits that would entitle him to be on the ballot. The temporary restraining order had limited life, and it did not survive Judge Gamble's nonsuit.[19]

 Which brings us to Mr. Triantaphyllis's petition for writ of mandamus in the court of appeals. On January 18, when this action was brought, Judge Gamble's application on file at the filing deadline was defective. There was no court decision entitling Judge Gamble to amend his application after the statutory deadline. Mr. Triantaphyllis' mandamus petition, which attacked the original application, had a basis in law for being granted. Accordingly, the court of appeals did not abuse its mandamus authority when it ordered Judge Gamble's name removed.[20]

The petition for writ of mandamus is denied.

Justice BAKER filed a concurring opinion in which Justice HANKINSON, Justice O'NEILL, and Justice JEFFERSON joined.

Justice BAKER, joined by Justice HANKINSON, Justice O'NEILL, and Justice JEFFERSON, concurring in the judgment only.

This is an election mandamus. The issue is whether the Election Code (the Code) permits a party officer to allow a candidate who filed a defective application before the filing deadline to amend his application after the deadline so the party chair can place the candidate on the ballot. The Code and well-established Texas law answer this question "no." Consequently, I agree with the Court's judgment denying mandamus relief. But I cannot join in the Court's opinion because it wholly contradicts Texas' election law.

## I. BACKGROUND

The following facts are undisputed. Judge Brent Gamble is the presiding judge of the 270th District Court in Harris County. On December 19, 2001, Judge Gamble filed an application to have his name placed on the Republican party primary ballot. His application stated that the office he sought for election was "Judge, 190th Civil Dist. Court." Judge Gamble contends that he intended to file for the 270th District Court, the court he currently presides over. Indeed, the petitions accompanying Judge Gamble's application identified the 270th District Court as the office he seeks.

The day after the January 2, 2002, filing deadline, Kathy Haigler, the Harris County Republican Party Primary Director, notified Judge Gamble that she intended to remove his name from the party's candidate list. Haigler advised Judge Gamble that she could not list him as a candidate

---

**18.** *See* Tex.R. Civ. P. 680.

**19.** *See Ex Parte Lesikar,* 899 S.W.2d 654, 654 (Tex.1995) (temporary restraining order not extended by implication).

**20.** *See* Tex. Elec.Code §§ 273.061, 273.062.

for the 270th District Court because his application stated that he was running for judge of the 190th District Court.

On January 9, 2002, Judge Gamble filed an original petition that requested a temporary restraining order against Haigler and the Harris County Republican party secretary, Iris Manes. *See* Tex. Elec. Code § 273.081. Judge Gamble's petition alleged that Haigler and Manes did not properly review his application and notify him of a defect within five days of the date he filed it. *See* Tex. Elec.Code § 141.032(b). Consequently, Judge Gamble requested the trial court to order Haigler and Manes to allow Judge Gamble to correct his application and to refrain from excluding Judge Gamble from the candidate list.

Judge Gamble submitted affidavits to support his application for a TRO. They show that his political consultant prepared his application and inadvertently wrote "190th" District Court rather than "270th" District Court. Judge Gamble did not notice the error and signed the application with a sworn statement that he intended to run for 190th District Court. Haigler stated in her affidavit that before the filing deadline she reviewed Judge Gamble's petition, which stated that he was running for the 270th District Court. At that time, Haigler assumed Judge Gamble's application also correctly listed the office he sought. Therefore, she did not carefully review the application when Gamble first filed it, and she did not notice the error until the day after the filing deadline.

The trial court granted a TRO on January 9, 2002. The TRO ordered Haigler and Manes to refrain from omitting Judge Gamble from the party's list as a candidate for the 270th District Court. Moreover, the TRO ordered Haigler and Manes to refrain from preventing Judge Gamble from correcting his application. The next day, Judge Gamble filed a corrected application with Haigler. Then, on January 14, 2002, Haigler filed the Republican Party's candidate list, which included Judge Gamble as a candidate for the 270th District Court.

On January 18, 2002, Judge Gamble nonsuited his injunction petition. Thus, the temporary-injunction hearing, which the trial court set for that day, never took place. The Democratic candidate for the 270th District Court, Tasso Triantaphyllis, attempted to intervene in Judge Gamble's suit, but he could not do so because Judge Gamble had nonsuited.

On the same day Judge Gamble nonsuited his injunction action, Triantaphyllis filed a petition for writ of mandamus in the court of appeals. He asked that court to compel various respondents (collectively the "party chair") to refrain from certifying Judge Gamble as a candidate on the primary election ballot and to remove his name from the candidate list. Triantaphyllis argued that the Code did not authorize the party chair to allow Judge Gamble to correct his application after the filing deadline so the party chair could put him on the candidate list.

The court of appeals granted Triantaphyllis mandamus relief on January 31, 2002. 68 S.W.3d 861. It concluded that, after the filing deadline, "Judge Gamble had no right, equitable or otherwise, to amend his application to correct the designation of the office he sought." 68 S.W.3d at 869. It also determined that the candidate—not the party chair—is ultimately responsible for filing a correct application before the filing deadline. Accordingly, the court of appeals held that the party chair must exclude Judge Gamble's name from the candidate list for the 270th District Court. 68 S.W.3d at 869.

Judge Gamble now petitions this Court for a writ of mandamus directing the court of appeals to vacate its conditional writ. Judge Gamble seeks to have his name placed back on the Republican Party primary election ballot for the 270th District Court.

## II. THE ARGUMENTS

Judge Gamble concedes that his original application did not comply with section 141.031 of the Code because it misidentified the office he sought. However, he argues that he had the right to seek equitable relief in the trial court under section 273.081 of the Code to fix the alleged "clerical" mistake. Judge Gamble asserts that equitable relief was the only avenue for him to achieve the "just and reasonable result" the Legislature intended when it enacted the Code. *See In re Bell,* —— S.W.3d ——, 2002 WL 87074 (Tex.2002) (orig. proceeding) (Courts must construe the Code according to the Code Construction Act.).

Moreover, citing section 141.032(a) and (e) of the Code, Judge Gamble contends that the party chair had a duty to review his application to determine whether it complied with the Code and to notify him immediately if it did not. Judge Gamble argues that he established in the trial court that had the party chair followed her alleged statutory duty to review his application and notify him about its defect, he would have timely corrected the mistake. Thus, Judge Gamble contends, the trial court's TRO was proper, and the court of appeals erred in determining he could not correct his application after the filing deadline.

In response, Triantaphyllis argues that the court of appeals correctly concluded that the candidate bears the ultimate responsibility to ensure his application complies with the Code. Further, Trianta-phyllis contends that the court of appeals correctly determined that a candidate cannot amend his application after the filing deadline. Triantaphyllis reasons that the Code mandates that an application contain specific information, including the office the candidate seeks, or the party chair must reject it as defective. *See* TEX. ELEC.CODE §§ 141.031(4)(C), 172.029(d).

Additionally, Triantaphyllis points out that the petition is the only document, apart from the application, that could possibly be used to determine the office Judge Gamble sought. However, the Code expressly prohibits using the petitions to correct an error in the application. TEX. ELEC.CODE § 141.032(c).

## III. APPLICABLE LAW

The Code mandates that a candidate's application for a place on the ballot provide specific information. *See* TEX. ELEC.CODE § 141.031. Such information includes, among other things, "the office sought, including any place number or other distinguishing number." TEX. ELEC.CODE § 141.031(4)(C). The Code imposes a mandatory duty on a candidate to file a correct application on or before 6:00 p.m. January 2, 2002. *See* TEX. ELEC.CODE § 172.023(a). If a candidate's application does not comply with the Code's requirements, the party chair must omit the candidate's name from the list submitted to the Secretary of State. TEX. ELEC.CODE § 172.029(d).

The Code specifies the party chair's duties upon receiving an application for a place on the primary ballot. *See* TEX. ELEC.CODE § 141.032. After a candidate files an application for a place on the ballot, the party chair "shall review the application to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the

candidate's name to be placed on the ballot." TEX. ELEC.CODE § 141.032(a). The party chair must review an application no later than the fifth day after the candidate files the application. TEX. ELEC.CODE § 141.032(b). But if a petition accompanies the application, the party chair shall complete the review "as soon as practicable" after the date the candidate files the application and petition. TEX. ELEC.CODE § 141.032(c). If the party chair determines an application complies with the Code, this does not preclude a later determination that the application does not comply. TEX. ELEC.CODE § 141.032(d). Moreover, if the application does not comply with the Code's requirements, the party chair "shall reject the application and immediately deliver to the candidate written notice of the reason for the rejection." TEX. ELEC.CODE § 141.032(e).

Texas courts have consistently held that the candidate—not the party chair—is primarily responsible and accountable for properly completing and timely filing an application for a place on the ballot. *Brown v. Walker,* 377 S.W.2d 630, 632 (Tex.1964) (orig. proceeding); *In re Gibson,* 960 S.W.2d 418, 421 (Tex.App.-Waco 1998, orig. proceeding); *Escobar v. Sutherland,* 917 S.W.2d 399, 404 (Tex.App.-El Paso 1996, orig. proceeding); *Bejarano v. Hunter,* 899 S.W.2d 346, 350 (Tex.App.-El Paso 1995, orig. proceeding); *Jones v. Mather,* 709 S.W.2d 299, 300 (Tex.App.-Houston [14th Dist.] 1986, orig. proceeding); *Jaime v. Patlan,* 709 S.W.2d 334, 335 (Tex.App.-San Antonio 1986, orig. proceeding); *Leach v. Fischer,* 669 S.W.2d 844, 847 (Tex.App.-Fort Worth 1984, orig. proceeding). These courts acknowledge that, even if the party chair's conduct misled the candidate or the party chair failed to fulfill certain ministerial duties, the candidate has the ultimate responsibility to ensure the application complies with the Code.

Moreover, the filing deadline is absolute, and no party official can alter it. *Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984) (orig. proceeding). If a candidate's application does not comply with the Code's requirements, the party chair has no discretion but to reject the application and remove the candidate's name from the candidate list. TEX. ELEC.CODE §§ 141.032(e), 172.029(d); *Escobar,* 917 S.W.2d at 406. Under limited circumstances, the Code provides a candidate means for relief if his efforts to obtain a place on the ballot are thwarted. Specifically, the Code provides that "[a] person who is being harmed or is in danger of being harmed by a violation or threatened violation of [the Code] is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring." TEX. ELEC.CODE § 273.081.

This Court recently stated that courts must construe the Code in light of the Code Construction Act's guidance that the Legislature intended a just and reasonable result when enacting statutes. *See In re Bell,* —— S.W.3d at ——, 2002 WL 87074 at *2. Courts must also consider the "object sought to be attained." *In re Bell,* —— S.W.3d at ——, 2002 WL 87074 at *2.

## IV. ANALYSIS

Judge Gamble concedes that he filed a defective application with the party chair on December 19, 2001. Because the application listed the 190th District Court—a court that exists—the application was not facially defective. The party chair's reviewing the accompanying petition that listed the 270th District Court, another existing court, would have shown that the application and petition did not comply with the Code. *See* TEX. ELEC.CODE §§ 141.031, 172.027. Consequently, the Code required the party chair to notify Judge Gamble about the defect and to remove Judge Gamble as a candidate on

the ballot. Tex. Elec.Code §§ 141.032(e), 172.029(d). The party chair did notify Judge Gamble and did exclude his name from the list. But the party chair then permitted Judge Gamble to correct his application after the filing deadline so his name could be placed back on the candidate list.

No Code provision allows the party chair to accept an untimely amended application to correct a mistake on an application. Rather, the Code expressly requires that the party chair reject a defective application and omit the applicant's name from the candidate list. Tex. Elec.Code §§ 141.032(e), 172.029(d). Judge Gamble contends that the party chair properly accepted his amended application after the filing deadline, because the party chair did not timely notify him of the defect under section 141.032 so he could correct the problem before the filing deadline. But Judge Gamble gives section 141.032 more meaning than its plain, unambiguous language demonstrates.

Subsections (a), (b), and (c) only require that the party chair review an application—within five days or as soon as practicable if filed with a petition—to ensure it complies with the Code's requirements. Tex. Elec.Code § 141.032(a),(b),(c). If the application does not comply with the Code, then subsection (e) requires the party chair to immediately notify the candidate about the reason for the rejection. Tex. Elec.Code § 141.032(e).

Certainly, if the party chair notifies a candidate about an error before the filing deadline, the applicant may attempt to timely correct the application. *See Escobar,* 917 S.W.2d at 406. However, section 141.032 does not, as Judge Gamble contends, enable the party chair to accept an amended application after the filing deadline. Rather, the party chair's duties under section 141.032 are limited and purely ministerial. *See Escobar,* 917 S.W.2d at 406; *Bejarano,* 899 S.W.2d at 350. The Code requires a party chair to reject a defective application regardless of whether the party chair notices the defect before or after the filing deadline. *See* Tex. Elec. Code § 141.032(e), 172.029(d). Thus, it remains the candidate's responsibility to file a timely, correct application for a place on the ballot. *See Brown,* 377 S.W.2d at 632; *In re Gibson,* 960 S.W.2d at 421; *Escobar,* 917 S.W.2d at 404; *Bejarano,* 899 S.W.2d at 350; *Jones,* 709 S.W.2d at 300; *Jaime,* 709 S.W.2d at 335; *Leach,* 669 S.W.2d at 847.

Judge Gamble relies on section 273.081 and the trial court's TRO to argue that the party chair properly accepted his amended application and placed his name on the candidate list. However, Judge Gamble misplaces his reliance on the TRO for three reasons. First, the TRO was based on Judge Gamble's faulty allegation that the party chair had to review his application within five days from when Judge Gamble filed it. *See* Tex. Elec.Code § 141.032(b). But because a petition accompanied Judge Gamble's application, the party chair only had to review the application "as soon as practicable" under section 141.032(c). Second, the TRO grants relief outside the trial court's limited injunctive power. The TRO did not maintain the status quo as our law requires. *See Cannan v. Green Oaks Apartments, Ltd.,* 758 S.W.2d 753, 755 (Tex.1988). Rather, the TRO granted Judge Gamble the permanent relief he requested—that the party chair permit Judge Gamble to amend his application post-deadline, accept the amended application, and place him on the ballot. Thus, Judge Gamble could immediately nonsuit his action without a hearing on the merits after the party chair fully complied with the TRO. Third, the Code does not impose any duty upon, nor does it

allow, the party chair to permit a candidate to file an amended application and place a candidate's name on the ballot after the statutory filing deadline expires. Simply put, the Code does not support the relief the trial court granted in the TRO. Instead, the Code mandated the party chair to reject Judge Gamble's defective application and omit his name from the candidate list. TEX. ELEC.CODE §§ 141.032(e), 172.029(d); *see also Brown*, 377 S.W.2d at 632; *In re Gibson*, 960 S.W.2d at 421; *Escobar*, 917 S.W.2d at 404; *Bejarano*, 899 S.W.2d at 350; *Jones*, 709 S.W.2d at 300; *Jaime*, 709 S.W.2d at 335; *Leach*, 669 S.W.2d at 847.

Finally, Judge Gamble argues that the party chair's accepting his untimely amended application and placing his name on the ballot achieves a "just and reasonable result." *See In re Bell*, —— S.W.3d at ——, 2002 WL 87074 at *2. However, the Code's clear, mandatory language demonstrates that the Legislature intended the party chair's duties and the application requirements under the Code to do more than simply protect candidates, as Judge Gamble urges us to believe. The party chair's duties under the Code are designed to ensure a fair and predictable electoral process. *See Escobar*, 917 S.W.2d at 410. Section 141.032 defines the party chair's ministerial duties in reviewing applications. *See Escobar*, 917 S.W.2d at 406; *Bejarano*, 899 S.W.2d at 350. It does not expressly provide any remedial measures for a candidate upon receiving notice that he filed a defective application. But it does mandate that the party chair reject a defective application. TEX. ELEC.CODE § 141.032(e). Moreover, section 172.023 requires that candidates file applications no later than 6 p.m. on January 2, 2002. The filing deadline is absolute and no party officer can alter it. *Painter*, 667 S.W.2d at 125. If party officials could alter the statutory filing deadline, this "could lead to or encourage abusive practices." *Painter*, 667 S.W.2d at 125. If party officials could accept defective applications after the statutory filing deadline, this could also lead to electoral fraud. *Painter*, 667 S.W.2d at 125.

Reading sections 141.032 and 172.023 together, the Legislature's intent is clear. By providing an absolute filing deadline and requiring the party chair to reject applications that do not comply with the Code, the Legislature has ensured equal treatment of candidates, protection for the voters from electoral fraud, and a fair and predictable electoral process. *See Painter*, 667 S.W.2d at 125; *Escobar*, 917 S.W.2d at 410; *Bejarano*, 899 S.W.2d at 353. But allowing the party chair, or the trial court through its limited power under section 273.081, the discretion to disregard the Code and accept amended applications after the filing deadline would render the Code's filing deadline entirely meaningless. This, in turn, would produce inconsistent results, because a party chair's or trial court's determinations about which errors a candidate may amend after the filing deadline will undoubtedly vary. This cannot be the "just and reasonable result" the Legislature "sought to attain." *See In re Bell*, —— S.W.3d at ——, 2002 WL 87074 at *3.

## V. ADVISORY ADJUDICATION BY SPECULATION

The Court agrees that we must deny Judge Gamble's mandamus petition. However, the Court further explains that Judge Gamble would have the right to permanent equitable relief if he pursues his trial court action. The Court determines that the trial court, in exercising its equitable powers under section 273.081, should balance the candidate's responsibility with the party chair's responsibility. Here, the Court explains, the party chair

had a duty under section 141.032 to "promptly" notify Judge Gamble about the defective application so he could correct it before the filing deadline. However, the Court's holding that the trial court could grant equitable relief here is inappropriate advisory adjudication by speculation.

Specifically, the Court opines that Triantaphyllis may attempt to demonstrate why the trial court should not grant equitable relief. But if he cannot do so, the trial court must determine the party chair violated the Code because she did not promptly notify Judge Gamble about the clerical defect before the filing deadline. Not only does the Court's conclusion ignore that the party chair does not have the duty the Court asserts she has under section 141.032, but it also disregards Judge Gamble's allegations, the undisputed facts, and the mandamus record.

Judge Gamble's injunction petition specifically alleged—not once but twice—that the party chair failed to review his application and notify him of the defect within five days of the date he filed it. Therefore, Judge Gamble alleged that the party chair violated section 141.032(b). But the record shows that, because Judge Gamble filed an application accompanied with a petition, section 141.032(c) applied so the party chair only had to complete her review "as soon as practicable." Notably, Judge Gamble's mandamus petition in this Court does not allege the party chair should have notified him within five days. Nor did Judge Gamble plead or rely on section 141.032(c)'s "as soon as practicable" language in the trial court, court of appeals, or here. This is because the undisputed facts demonstrate that once the party chair reviewed Judge Gamble's application for content, she immediately notified Judge Gamble about the mistake, as section 141.032(a) and (e) require. Accordingly, the Court's analysis is grounded on an unfounded assumption that the party chair violated the Code even though Judge Gamble does not assert a viable Code violation. And, based on the allegations and the record, one did not occur.

Moreover, though the Court concludes that it cannot grant Judge Gamble mandamus relief, it changes and expands the Code's language and case law about what equitable relief a trial court can grant under section 273.081. The Court recognizes that the trial court's equitable power in an election case is not unrestrained. Despite that recognition, it concludes that a trial court may use such power to correct an obvious "clerical" error like the one in Judge Gamble's application. The Court cites no legal basis for its decision and does not explain how this comports with Texas law. The Court does not do so, because it cannot do so.

Section 273.081 limits the trial court's equitable powers to remedying a Code violation or threatened violation. Tex. Elec. Code § 273.081. The trial court's equitable power is also constrained by the rule that a party seeking equitable relief must come into court with clean hands. *Wynne v. Fischer*, 809 S.W.2d 264, 267 (Tex.App.-Dallas 1991, writ denied). But the Court decides the trial court can exercise its equitable powers here because section 141.032 "serves as a safety net for candidates who file their applications early in the filing period, assuring that individuals willing to commit to public service will receive the assistance of party officials in complying with the myriad and technical requirements for becoming a party candidate." 71 S.W.3d at 318. The Court's assuming that section 141.032 makes the party chair ultimately responsible for helping candidates comply with the Code arises only from the Court's fertile imagination and not from any legislative history

or from applying the Code Construction Act.

Likewise, the Court provides no legal basis for its contention that the party chair's failure to follow section 141.032's application review and notice requirements is "significant and is a consideration for a court called upon to hear a candidate's claim for equitable relief" and that a candidate's "mistakes on an application are not an absolute bar to equitable relief." 71 S.W.3d at 318. To the contrary, this Court has consistently held that equitable relief is only available under section 273.081 if the candidate fully complied with the Code and only the party chair's violating the Code precluded the candidate from getting on the ballot. *See Davis v. Taylor*, 930 S.W.2d 581, 584 (Tex.1996) (orig. proceeding); *Painter*, 667 S.W.2d at 125. Similarly, Texas courts have consistently held that candidates, not the party chair, are ultimately responsible for ensuring their applications comply with the Code. *See Brown*, 377 S.W.2d at 632; *In re Gibson*, 960 S.W.2d at 421; *Escobar*, 917 S.W.2d at 404; *Bejarano*, 899 S.W.2d at 350; *Jones*, 709 S.W.2d at 300; *Jaime*, 709 S.W.2d at 335; *Leach*, 669 S.W.2d at 847. The Court's decision, however, ignores this law and places a new burden on party election officers that these cases and the Code do not contemplate or express.

Finally, the Court contends that the election schedule, not the statutory deadline, constrains the trial court's power to fashion equitable relief. 71 S.W.3d at 318. This may be true *if* the trial court's equitable relief remedies a party official's Code violation. *See, e.g., Painter*, 667 S.W.2d at 125. But the Court's conclusion that the trial court has equitable powers to remedy a candidate's mistake after the filing deadline disregards the Code's plain language about the absolute deadline. Tex. Elec. Code § 172.023. If the Court intended to interpret the Code to produce a just and reasonable result, as the Code Construction Act requires, it should not endow the trial court with broad equitable power contrary to section 273.081's express, limiting language.

The Court has removed the ultimate responsibility for timely filing an application that complies with the Code from the candidate and places it on the party chair. And the Court's decision renders the statutory filing deadline meaningless. The uncertainty the Court creates destroys the legislative intent for a fair and predictable election process. *See, e.g., Painter*, 667 S.W.2d at 125; *Escobar*, 917 S.W.2d at 410; *Bejarano*, 899 S.W.2d at 350; Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 331, 75th Leg., R.S. (1997); House Comm. on Elections, Bill Analysis, Tex. H.B. 331, 75th Leg., R.S. (1997). The Court's decision opens trial courts' doors to challenges to applications and petitions that the Code does not contemplate or permit. Specifically, eradicating the filing deadline will leave candidates and voters alike uncertain about how and when a person may obtain a place on the ballot, will open the election process to fraud, and will foster abusive practices through political maneuvering in the courts.

## VI. CONCLUSION

No Code provision allows the party chair to accept an amended application after the filing deadline when the original application contained a mistake. Furthermore, no provision permits the party chair to include a candidate's name on the ballot when that candidate's application did not comply with the Code. The court of appeals correctly issued mandamus relief and ordered the party chair to remove Judge Gamble's name from the candidate list. The Court agrees with the court of appeals' decision, but its equitable-relief anal-

ysis flouts our election law. Accordingly, I concur only in the Court's judgment denying Judge Gamble's petition for writ of mandamus.