Footnotes in HTML versions of 
opinions are designated by boxes (click on the box to see the footnote text) and 
are not numbered. For an exact copy of the opinion, retrieve the Adobe PDF 
version.
 
 
IN 
THE SUPREME COURT OF TEXAS
 
════════════
No. 06-0088
════════════
 
In re The Honorable Karen 
Angelini
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
              Justice 
Wainwright, dissenting.
 
              The 
Court acknowledges that the Respondent’s petition did not comply at the filing 
deadline with the requirements of the Texas Election Code, yet it refuses to 
grant the mandamus and hold that respondent did not qualify as a candidate for 
Justice of the Fourth Court of Appeals, Place 5. I therefore respectfully 
dissent.
I.
              On 
the filing deadline, Lauro Bustamante’s petition to be certified as a primary candidate 
for the Court of Appeals for the Fourth District, Place 5, contained less than 
half of the required 250 signatures. Tex. 
Elec. Code § 172.021(e). This assumes, notwithstanding all the reasons 
not to, that the circulator’s signature on two petition pages validated the 
petition signatures on other parts of his petition. 

See section II, infra. Rather than simply affirm the invalidity of 
the petition and enforce the Election Code’s stricture that only candidates who 
comply with its requisites by the deadline may be certified for the ballot, the 
Court extends the legislative deadline so Bustamante 
can attempt to cure the defects in his petition. See Tex. Elec. Code §§ 141.065, 172.021. The 
Legislature’s considered judgment notwithstanding, the Court in this case grants 
a four-week extension of the deadline.
              All 
parties before the Court—Real Party Bustamante; 
Respondent Charles Soechting, chairman of the Texas 
Democratic Executive Committee; and Relator, the 
Honorable Karen Angelini, Justice of the Court of 
Appeals for the Fourth District, Place 5—acknowledge that Bustamante’s petition for Place 5 on file with the party 
chair by the 6:00 p.m. deadline on January 2, 2006 (or even forty minutes 
later), was not compliant. 

Id. § 
172.023(a). His filing was not even close to meeting the Election Code 
requirements. Bustamante did not file a petition that 
he claims was valid until January 30, when he filed a revised petition arguably 
in an attempt to validate many additional signatures on his petition. The fact 
that the petition was defective as of the deadline should resolve the case, 
irrespective of the fact issues the Court identifies. See In re 
Francis, __ S.W.3d __, __ (Tex. 2006) (Wainwright, J., dissenting). The 
Court should enforce de-certification of candidates under the Election Code if 
their failure to include information in their applications “would contravene 
express requirements and impair the purpose of the Election Code.” Id. Resolution of 
the fact issues the Court identifies is unnecessary to resolve this case.
              The 
Court denies the mandamus because of five factual disputes: (1) whether Bustamante filed his application and petition before the 
deadline, (2) whether he complied with all statutory requirements except for 
facial defects that are apparent within the four corners of his filings, (3) 
whether the Party had sufficient time to complete its statutory review of his 
filings before the deadline, (4) whether the Party notified Bustamante before the deadline that his filings complied 
with statutory requirements, and (5) whether Bustamante could have cured any facial errors before the 
deadline had the State Chair notified him of the defects rather than approving 
them. __ S.W.3d __, __.
              The 
first factual dispute is immaterial under the Election Code as it is undisputed 
that the petition Bustamante filed failed to comply 
with the Code’s requirements on the filing deadline, and for four weeks 
thereafter. Only because the Court created a cure period on January 27, 2006 in 
Francis does it matter whether Bustamante’s 
defective petition was filed at 5:04 p.m. rather than 6:04 p.m. Francis, 
__ S.W.3d at __. Assuming his petition was filed at 5:04 p.m., it was 
statutorily defective for failing to include, as of 6:00 p.m. on January 2, 
2006, information that is important to the purpose of the statute. That should 
end the dispute. The other fact issues come into play only because the Court 
decided in Francis that if a party chair does not catch facial 
“technical” or “minor” defects before the deadline, the candidate is entitled to 
an opportunity to cure a defective petition after the filing deadline. See 
id. It is a mystery why the state party chairs have to do the work for the 
candidates, 

but that is the law now. These factual questions would not be important to the 
Court today if it had not previously extended the filing deadline. Predictably, 
this case is the result of Francis and Holcomb.
              The 
Court’s opinions in Francis, Holcomb, and this case raise a number 
of concerns. Even if one accepts that it was proper for the Court to create a 
cure period beyond the statutory deadline, we had previously established a high 
hurdle for extending the deadline. “[I]t is an extraordinary departure from the 
careful planning of the legislature, and not to be invoked lightly.” In re 
Gamble, 71 S.W.3d 313, 318 (Tex. 2002). The holdings in Francis, 
Holcomb, and this case indicate, instead, that extending the filing 
deadline is no longer extraordinary. The new cure period apparently applies to 
any disqualifying mistakes on a judicial petition, without regard to whether 
they are minor or major, technical or substantive. In Francis, the Court 
recognized that the Code’s requirement that the petition identify the office for 
which a candidate is running is important to prevent fraud or voter confusion. 
__ S.W.3d at ___. Nevertheless, the Court characterized the omissions as 
“technical” or “minor” defects and allowed a post-deadline cure. Id. In 
Holcomb, the Court recognized that a petition with duplicate signatures 
was invalid and yet allowed a candidate to obtain replacement signatures after 
the deadline. See Holcomb, __ S.W.3d at __. In this case, Bustamante was short at least half the 250 signatures 
required by statute, yet the Court allows him an opportunity to show he could 
cure disqualifying defects.
              Francis, 
Holcomb, and this case raise other problems. Our legal system is now 
faced with election challenges from persons whose filings were demonstrably and 
admittedly inadequate as of the filing deadline, which likely would not have 
been countenanced before Francis and Holcomb. And the Court must 
now define new standards to implement the holdings of these cases: How long is a 
“cure period”? If filing a petition more than 50% short of the required quantity 
of signatures is a technical mistake entitling the filer to cure, which defects, 
if any, cannot be cured after the filing deadline? The Court says only facial 
“technical” or “minor” defects can be cured post-deadline, as was the case in 
Gamble, but, as shown, the purview of those terms must be significantly 
widened for that to be so after Francis and Holcomb. How long 
before the filing deadline must an application or petition be filed to have been 
filed “early” enough to entitle the applicant to fix a defective petition? 
See Gamble, 71 S.W.3d at 318 (Section 141.032 “serves as a safety net for 
candidates who file their applications early in the filing period . . . .”). In 
In re Sharp, __ S.W.3d __, __ (Tex. 
2006), the Court granted the candidate the opportunity to cure a presumed 
defective petition filed the day of the deadline, notwithstanding 
Gamble’s holding that such equitable relief may be considered only for 
parties who file their applications “early in the filing period.” Gamble, 
71 S.W.3d at 318. In Francis, the Court cited the same early filing 
requirement, ___ S.W.3d at ___, but for no apparent purpose, as the Court 
ignored the requirement that very day when it issued Sharp. Under the 
facts of this case, the Court concludes that filing less than an hour before the 
deadline is early enough to entitle the applicant to an opportunity to effect 
post-deadline compliance. None of these problems exist in the language of the 
Election Code; the Court created them.
              The 
Court attempts to bring this case under the umbrella of Gamble. 
Gamble involved what was truly a clerical error—all petition pages 
correctly indicated the 270th District Court, but the cover application 
indicated the 190th District Court. 71 S.W.3d at 315. Judge Gamble filed an 
application and petition with all the necessary information, including all 
required signatures. Id. Judge Gamble also filed his application two 
weeks before the deadline, not an hour or a few days before the deadline. 
Id. These facts distinguish Gamble from Francis, 
Holcomb, and this case.
              Legally, 
Gamble was also a different animal. In Gamble the Court warned 
against extending the filing deadline and did not lightly discard it. Id. 
at 318. The Gamble Court did not allow a candidate to file, for the first 
time, a petition that included information necessary to avoid impairing the 
purpose of the statute four weeks after the Legislature’s deadline. Moreover, 
the Court contradicts Gamble in holding that Francis only applies 
to “defective filings that have been erroneously approved.” Francis, __ 
S.W.3d at __. The party official in Gamble did not approve but rejected 
the application. 71 S.W.3d at 315. The reasoning in Gamble was ostensibly 
followed in Francis, but Gamble was limited to candidates who file 
their applications early in the filing period. Id. at 318. It would 
ridicule logic to attempt to argue that Bustamante 
filed early. The Court, therefore, has issued two contradictory standards on 
this point. I do not hazard a guess as to which is controlling. This case is not 
Gamble, and neither are Francis and Holcomb. Sharp 
is procedurally distinguishable from all three of these cases. 


II.
              I 
will respond to the Court’s critiques.
              The 
Court says that Bustamante did not admit that his 
petition was not compliant on the January 2 filing deadline. The record speaks 
for itself. First, Bustamante states that he will 
prove that he filed early enough “to allow for corrections” in his petition, and 
he never argues that his January 2 petition was valid. Second, Respondent Soechting, the Democratic party chair, told Bustamante by letter dated January 9 that his application 
filed on January 2 was rejected. It was defective for failure to “correctly and 
completely acknowledge” the signatures on the petition. Nothing in the record 
shows that Bustamante challenged the party chair’s 
conclusion that his January 2 filing lacked proper acknowledgments on the 
petition. Bustamante took no action to gain a place on 
the ballot until after the Court issued Francis and Holcomb, at 
which time he sought an opportunity to resurrect a noncompliant filing. Finally, 
the Court acknowledges, as it must, that Bustamante’s 
petition on file as of the deadline was defective. See __ S.W.3d at ___ 
(One factual dispute is “whether Bustamante could have 
cured any facial errors before the deadline had the State Chair properly 
notified him of those defects.”). Otherwise, the opportunity to cure would not 
be needed and the evidentiary hearing ordered by the Court would be a waste of 
time.
              The 
Court suggests that Bustamante’s January 2 petition 
included enough signatures to satisfy the Election Code. One requirement for a 
signature on a petition to be valid under section 141.063(3) of the Election 
Code is that each “part of the petition” in which the voter’s signature appears 
includes a circulator’s affidavit. The circulator’s affidavit states the 
circulator read certain information to the signer, witnessed each signature, 
verified each signer’s registration status, and believes each signature to be 
genuine. Tex. Elec. Code § 
141.065. To be certified as a candidate for a place on a court of appeals, a 
candidate must obtain 250 valid signatures. Id. § 172.021(e). On the 
filing deadline, Bustamante filed a petition to be 
certified as a candidate for the Court of Appeals for the Fourth District, Place 
5, in which only two of the 42 petition pages have a signed circulator’s 
affidavit. Whether the reference to “part” in section 141.063(3) requires each 
page or each section of a petition to have a signed circulator’s affidavit, 
Bustamante did not supply 250 valid signatures by the 
statutory deadline.
              The 
Court suggests that Bustamante’s petition contains 
over 400 valid signatures. The face of Bustamante’s 
filing shows that, as of the deadline on January 2, he had no more than 20 
signatures on petition pages with signed circulator affidavits. Neither Bustamante nor the Democratic party chair argue that the two 
circulator affidavits signed by Bustamante validate 
larger “parts” of his petition. However, even if the statute’s reference to 
“parts” refers to groups of petition pages, Bustamante 
still lacks the required 250 signatures for several reasons. First, the petition 
is not divided into discernable sections; there are not multiple, defined 
“parts.” At best, a circulator’s affidavit might apply not only to the page 
containing it but also to subsequent consecutive pages circulated by the same 
person. Here, the first petition page includes a circulator affidavit signed by 
Bustamante designated as “Page 1 of 28,” followed by a 
single unsigned petition page. Mary Cortez is identified as the circulator of 
the next two pages, although both pages lack a signed circulator affidavit. 

The next 29 pages do not identify a circulator or include a signed circulator 
affidavit. The final grouping of nine pages begins with a page identifying Bustamante as circulator, includes a signed affidavit, and 
is designated “Page 1 of 15” even though there are only 8 pages that follow it. 
Bustamante does not attempt to reconcile this 
contradictory information in his filing or define the “parts” of his petition. 
Even giving Bustamante the benefit of the doubt and 
creating “parts” from the face of his petition, he falls almost 150 signatures 
short of the required 250. Notably, the Court does not assert that the 400 
signatures were valid or even that more than 20 are valid. 


              The 
Court should clearly state the rule of law established by its recent holdings. 
Texas has to live with the opinions in Francis, Holcomb, and this 
case. They affect every Texan when used to determine which candidates may be 
certified for elective office. The Court should at least be clear so that this 
new law can be consistently applied by judges and understood by the public and 
the bar. The new regime established in Francis, Holcomb, and this 
case can be simply stated: The Court extends the filing deadlines for virtually 
any defects in a candidate’s petition, irrespective of whether the defects are 
technical or substantive and whether the filing was at the last minute or early 
in the filing period.
III.
              The 
Francis and Holcomb opinions changed the legal landscape for 
applicants seeking certification to become candidates for judicial office. In 
this case, the Court wrestles with the problems these opinions created. 
Fortunately, the February 21 deadline to contest candidate applications has 
passed; otherwise, there would be more disruption caused to the election 
process, and I suspect we would see more of these cases. See Tex. Elec. Code § 141.034(a).
 
                                                                                      ________________________________________
                                                                                      J. 
Dale Wainwright
                                                                                      Justice
 
OPINION 
DELIVERED: February 24, 2006