

# NUMBER 13-18-00097-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **ROSA LINDA SANCHEZ GAULT,** | **Appellant,** |
| **v.** | |
| **WILLIAM GAULT,** | **Appellee.** |

### On appeal from the 107th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

This is an appeal arising from a divorce between appellant Rosa Linda Sanchez Gault and appellee William Gault. By fifteen issues which we consolidate into five, Rosa Linda argues that the trial court: (1) did not have subject matter jurisdiction; (2) abused its discretion when it ordered a name change; and erred when it (3) ordered a permanent injunction enjoining her from contacting her ex-husband's family; (4) issued a judgment

nunc pro tunc; and (5) granted a motion for new trial.

We reverse and render in part and affirm in part.

## I. BACKGROUND

William and Rosa Linda married on February 11, 2017. Six months later, William filed for divorce claiming the marriage had become insupportable due to discord or conflict of personalities. In conjunction with the divorce proceedings, William sought and received a temporary restraining order enjoining Rosa Linda from communicating or coming within 200 feet of William's six children from a prior marriage, including his daughter with special needs, and his father who suffers from dementia.

At the final divorce hearing, William proved up the jurisdictional facts showing that both parties had been Texas residents for six months, and Cameron County residents for ninety days, prior to the hearing. William further testified that Rosa Linda had violated the temporary restraining order on numerous occasions. He presented cell phone records showing that she repeatedly called his elderly father James at his nursing home. She also allegedly used a third party's cell phone to gain access to James to speak poorly of William and William's decision to file for divorce. William shared that these acts made it difficult for him to tend to his father's medical and housing needs as his court-appointed guardian because sometimes his father refused to speak to him because of something Rosa Linda expressed. William testified that Rosa Linda once encouraged James to meet her at a local McDonald's where they would not be seen together by anyone they knew. William finally urged the court to change Rosa Linda's surname back to Sanchez, a name she bore for more than twenty years prior to their marriage, to diminish Rosa

2

Linda's ability to interfere in his family matters.

Rosa Linda's counsel responded that although her answer to the divorce petition requested the court to revert her last name back to Sanchez, upon reconsideration, Rosa Linda wished to keep her Gault last name. The trial court, in granting the divorce, sided with William and ordered Rosa Linda's name changed back to Sanchez. He also granted a permanent injunction to prevent Rosa Linda from contacting William's family.

Rosa Linda motioned for a new trial solely to contest the name change; she did not object to or seek to relitigate the permanent injunction. During the hearing on her motion, Rosa Linda re-urged her desire to keep her Gault surname. She admitted that while she had some accounts in her former Sanchez name, she also had accounts under her Gault name, which she had changed at the request of William. The hearing record showed that Rosa Linda violated her temporary restraining order on more than one occasion by sitting in the pew directly in front of William and his family during Sunday church while wearing a t-shirt that belonged to William's late wife. The t-shirt had been hand-painted by William's late wife and depicted the six children as bumble bees buzzing around a deer stand with a sign on the deer stand that stated, "Mom is inside." The record also revealed that Rosa Linda used her Gault name to contact William's adult daughter enrolled at a special needs university to gain inappropriate access to her.

After the hearing on the new trial, the court signed a new judgment titled "nunc pro tunc." It clarified that the permanent injunction enjoined Rosa Linda from "communicating in any way, in person, electronically, by phone, email, or text or coming within 200 feet of [William's] sons and daughter and Mr. James Gault, [William's] father."

3

The court also made the following findings:

a.  The Court finds [Rosa Linda] was married to Juan Sanchez in 1984 and [Rosa Linda] took the surname Sanchez making her name Rosa Linda Sanchez.   [Rosa Linda] divorced Juan Sanchez in about 1987 but kept the surname Sanchez.   This was her first marriage.

b.  The Court finds [Rosa Linda] married Mario Sanchez in 2001 and divorced in 2004 but the divorce was not final until 2006.   This was her second marriage.

c.  The Court finds [Rosa Linda] has retained the surname Sanchez from 1984 until her marriage to [William] in 2017.

d.  The Court finds [Rosa Linda] married [William] on February 11, 2017 and separated on August 17, 2017.   [Rosa Linda] took the surname Gault.   This was her third marriage.

e.  The Court finds no children were born or adopted from the marriage of [Rosa Linda] and [William].

f.  The Court finds that no property was accumulated during the marriage.

g.  The Court finds that on August 31, 2017, [William] and his counsel and [Rosa Linda] and her counsel . . . appeared personally before the Court at the hearing on the Temporary Orders.   At that time the Court entered an Injunction prohibiting Respondent from coming within 200 feet of or communicating with [William's] sons and daughter and his Father, James Gault and that all agents, servants and or persons in active concert or participation with [Rosa Linda] are enjoined likewise.

h.  The court finds that [Rosa Linda] used her married name of Gault repeatedly to access [William's] father who is [a] disabled person in violation of the Temporary Orders and the permanent injunction.

i.  The court finds that if [Rosa Linda] is allowed to keep her married name she will continue to violate this court's injunction from coming near to [William]'s family and continued emotional harm to them.

j.  In summary[,] the short duration of the marriage, the fact that no children were born or adopted of the marriage, the fact that no property was accumulated during the marriage and the use of [William]'s last name to violate this court's orders, the court finds that [Rosa Linda]'s name should be changed to her former name.

The trial court re-affirmed its prior order to change Rosa Linda's last name to Sanchez.   This appeal ensued.

## II.  SUBJECT MATTER JURISDICTION

By her first issue, Rosa Linda claims the trial court did not have subject matter jurisdiction to change her name.

Appellate courts review a challenge to a trial court's subject matter jurisdiction ruling de novo.   *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).   Subject matter jurisdiction is an issue that may be raised for the first time on appeal and may not be waived by the parties.   *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).   When a Texas appellate court considers jurisdiction for the first time on appeal, it must construe the petition in favor of the non-moving party, and if necessary, review the entire record to determine if any evidence supports standing. *Id.* at 446.   "The general test for [subject matter jurisdiction] standing in Texas requires that there (a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought."   *Id.*

District courts have the power to adjudicate divorce proceedings and all issues contained therein.   *See, e.g.*, TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies . . . ."); TEX. GOV'T CODE ANN. § 24.008 (providing that district courts "may hear and determine any cause that is cognizable by courts of law or equity[.]").   The record established that both William and Rosa Linda had lived in Texas for six months and in Cameron County for ninety days prior to the final divorce hearing.   *See* TEX. FAM. CODE

5

ANN. § 6.301. Because the trial court had subject matter jurisdiction over the divorce, it also had jurisdiction over the name change. *See, e.g.*, *Chavez v. Chavez*, 269 S.W.3d 763, 768–69 (Tex. App.—Dallas 2008, no pet.) (showing that court had jurisdiction over the divorce and related issues, such as wife's request for name change). We disagree with Rosa Linda that the trial court did not have subject matter jurisdiction in this case. We overrule this issue.

### III. NAME CHANGE

Rosa Linda's second, and dominant, issue claims that the trial court abused its discretion in changing her surname back to Sanchez when she did not request and, in fact, opposed the change.

A trial court's ruling on a name change is reviewed under an abuse of discretion standard. *In re Mayol*, 137 S.W.3d 103, 105 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether it acted arbitrarily or unreasonably. *Id.*; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The mere fact that a trial court may decide a matter within its discretionary authority in a manner different than an appellate judge in similar circumstances does not demonstrate that an abuse of discretion has occurred. *See Downer*, 701 S.W.2d at 242; *In re Mayol*, 137 S.W.3d at 105.

The Texas Family Code provides that the court "shall order a change of name for a person other than a person with a final felony conviction or a person subject to the registration requirements of Chapter 62, Code of Criminal Procedure, if the change is in

6

the interest or to the benefit of the petitioner and in the interest of the public." *See* TEX. FAM. CODE ANN. § 45.103(a); *see also* TEX. CODE CRIM. PROC. ANN. arts. 62.001–.408 (setting forth the registration requirements for convicted sex offenders). Further, "the court shall enter a decree changing the name of a party specially praying for the change to a prior used name unless the court states in the decree a reason for denying the change of name." *See* TEX. FAM. CODE ANN. § 45.105(a).

A person, however, does not have the absolute right to change their name by court order. *In re Erickson*, 547 S.W.2d 357, 359 (Tex. App.—Houston [14th Dist.] 1977, no writ). "Generally, a name change should be granted unless there exists some wrongful, fraudulent, or capricious purpose." *Id.* In name change proceedings, judges may inquire into whether the petitioner has criminal judgments against him or her, has been bankrupt, or if the name change is desired for the purpose of concealing an adverse credit rating, a criminal record, or to otherwise work a fraud. *Id.*

Here, Rosa Linda asserts the trial court abused its discretion in changing her surname when a third party, and not her, requested it. Our analysis of Texas statutory law reveals that all statutes regarding name changes in the Texas Family Code, excluding those pertaining to minor children, are written in the context of a petitioner requesting a name change for themselves. *See* TEX. FAM. CODE ANN. § 45.101 ("An adult may file a petition requesting a change of name in the county of the adult's place of residence"). We have not found a statute that would indicate that an adult third party has the standing to request the name change of another adult person other than themselves. *See generally id*. §§ 45.001–.107. Moreover, there is no case law that indicates that a trial

court has the power to change the name of an adult at the request of a third party, and against the wishes of the adult.

Our court decided a case with similar facts in 1979. In *Fly v. Fly*, a husband petitioned the trial court to change his soon-to-be ex-wife's surname back to her maiden name. 590 S.W.2d 179, 181 (Tex. App.—Corpus Christi–Edinburg 1979, no writ). During the divorce proceeding, the trial court granted the husband's request to change his ex-wife's name. *Id.* This Court reversed the trial court because the record reflected that the ex-wife never requested or consented to the name change. *Id.* We held that "the trial court erred in changing her name without [the wife's] request or consent. Although the trial court has considerable discretion in a proper case, we deem this action to be an abuse of such discretion." *Id.* at 182.

We reach the same conclusion here. Although Rosa Linda initially requested to change her last name back to Sanchez in her pleadings, she reconsidered and made an oral trial amendment to keep her name during the final proceedings. *See* TEX. R. CIV. P. 66 (providing generally that a court may allow pleadings to be amended during trial). And while we recognize that the evidence established that Rosa Linda violated her temporary restraining order and caused numerous problems for William's family, this does not change our legal conclusion on this matter: William has no standing to request the name change for Rosa Linda. *See* TEX. FAM. CODE ANN. § 45.103(a). Accordingly, the trial court abused its discretion in granting the name change without Rosa Linda's consent. The trial court's order to change Rosa Linda's name was arbitrary because there are no statutes or case law to serve as a foundation for the proposition that one adult can request

8

a name change for another adult.   In light of the foregoing, we sustain this issue.[1]

## IV.  PERMANENT INJUNCTION

In her third issue, Rosa Linda claims the trial court erred when it granted a permanent injunction prohibiting her from contacting William's family.

A trial court's ruling on applications for permanent injunctions are reviewed for an abuse of discretion.   *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998).   A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles."   *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).   A final judgment for a permanent injunction may be rendered only after the case is tried on the merits.   *State v. Gibson's Distrib. Co.*, 436 S.W.2d 122, 123 (Tex. 1986).

Texas Rule of Civil Procedure 683 sets forth that every order granting an injunction shall be specific in terms and describe in reasonable detail the act or acts sought to be restrained.   TEX. R. CIV. P. 683.   In addition, due process requires that the enjoined party have the opportunity to be heard and a reasonable opportunity to prepare for the hearing.   *See* TEX. CONST. art. 1, § 19.

When determining the appropriateness of a permanent injunction, a court should balance the competing equities, including the public interest.   *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding).   Rosa Linda argues that the permanent

---

[1] Because sustaining this issue disposes of the matter, we need not address Rosa Linda's related issues to the name change, such as its constitutionality or whether the decision was supported with legally sufficient evidence.   *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").   Reversing the name change also means that Rosa Linda's issues and sub-issues regarding the court's issuance of a judgment nunc pro tunc and the motion for new trial are now moot.   Thus, we need not address these matters either.   *See id.*

injunction was improper because she was without notice as to the relief sought and because the injunction was overly broad. We disagree. This issue was heavily litigated on both sides and documented in the pleadings and hearing transcripts. The record established that the trial court properly exercised its discretion in ordering the permanent injunction. *See Operation Rescue-Nat'l*, 975 S.W.2d at 560. Rosa Linda's actions caused significant turmoil to William's family and the trial court's injunction sought to reduce her ability to create these problems. *Computek Computer*, 156 S.W.3d at 221. The injunction was also not overly broad: it prohibited her from communicating with William's family and also ordered her to keep 200 feet distance from the Gault family at all times. We overrule Rosa Linda's third issue. The permanent injunction remains in place.

## V. CONCLUSION

We reverse the trial court's order changing Rosa Linda's last name from Gault to Sanchez and render judgment denying the name change. The remainder of the judgment is affirmed.

LETICIA HINOJOSA
Justice

Delivered and filed the
26th day of August, 2019.

10