# IN THE SUPREME COURT OF TEXAS

No. 20-0663

IN RE TEXAS HOUSE REPUBLICAN CAUCUS PAC, ET AL., RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**PER CURIAM**

CHIEF JUSTICE HECHT and JUSTICE BOYD did not participate in the decision.

Several Republican Party candidates and organizations seek to prevent 44 Libertarian Party candidates from appearing on the 2020 general-election ballot due to the Libertarians' failure to pay the filing fee required by section 141.041 of the Texas Election Code. The Republicans concede that the statutory deadline to have the Libertarians removed from the ballot using a declaration of ineligibility passed on August 21. *See* TEX. ELEC. CODE § 145.035. They claim a later deadline applies to their petition, which they describe as a challenge to the Libertarians' ballot applications governed by the deadline in section 141.034.

For the reasons explained below, the Election Code does not authorize the requested relief. Because the Libertarian Party nominates candidates by convention rather than primary election, its candidates' applications are governed by chapter 181 of the Election Code, not by chapter 141's procedures for challenging ballot applications. *See id*. §§ 181.031–.034. The relators invoke deadlines governing challenges to "an application for a place on the ballot" under chapter 141, but

Libertarian Party candidates do not file such applications. Instead, they file "an application for nomination by convention" under chapter 181, which is a statutorily separate type of application governed by a separate set of statutes. *Id*. The Election Code does not subject the Libertarian candidates' applications for nomination by convention to the procedures and deadlines for ballot-application challenges on which the relators rely.

Although the result in this instance may be that candidates who failed to pay the required filing fee will nevertheless appear on the ballot, this Court cannot deviate from the text of the law by subjecting the Libertarian candidates' applications to challenges not authorized by the Election Code. The Legislature established detailed rules for ballot access and for challenges to candidates, and courts must carefully apply these rules based on the statutory text chosen by the Legislature. The available mechanism for seeking the Libertarians' removal from the ballot for failure to pay the filing fee was a declaration of ineligibility. However, the deadline by which such a declaration can achieve the removal of candidates from the ballot has passed. The Election Code does not permit the relators to bypass that deadline by belatedly challenging the Libertarians' applications. The petition for writ of mandamus is denied.

## I. Background

Section 141.041 of the Election Code, enacted in 2019, provides:

(a) In addition to any other requirements, to be eligible to be placed on the ballot for the general election for state and county officers, a candidate who is nominated by convention under Chapter 181 or 182 must:

(1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or

(2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

2

*Id.* § 141.041. It appears to be undisputed that numerous Green Party and Libertarian Party candidates did not pay the filing fee.

In an earlier mandamus action filed on August 17, Democratic Party candidates asked the Third Court of Appeals to direct the Green Party to declare three of its candidates ineligible under chapter 145 because they did not pay the filing fee. The court of appeals granted the requested relief. *In re Davis*, No. 03-20-00414-CV, 2020 WL 4931748, at *4 (Tex. App.—Austin Aug. 19, 2020, orig. proceeding). Chief Justice Rose dissented. The Green Party did not seek review of the Third Court's decision in this Court. Instead, it declared its challenged candidates ineligible and asked the Secretary of State to remove them from the ballot.[1]

On August 21, 2020, the last day to obtain a declaration of ineligibility that would remove a candidate from the ballot, Republican entities filed two mandamus petitions in the Third Court of Appeals seeking to have Libertarian candidates declared ineligible under chapter 145. *In re Nat'l Republican Congressional Comm.*, Nos. 03-20-00421-CV & 03-20-00422-CV, 2020 WL 5100110, at *1 (Tex. App.—Austin Aug. 25, 2020, orig. proceeding). The court of appeals concluded that the petitions were filed too late to afford sufficient time for the court to hear from the Libertarian respondents and make an eligibility ruling that same day. *Id.* at *2. Because removal of the Libertarians from the ballot was no longer possible, the court dismissed the petitions

---

[1] This is not to suggest that the court of appeals' decision to remove the Green Party candidates from the ballot is necessarily beyond review. On September 4, the Attorney General submitted an amicus letter supporting neither party. The Court considered that submission prior to issuing this decision. In its amicus letter, the Attorney General, on behalf of the Secretary of State, represents that "there is still time . . . for the Secretary of State to amend her certification" of the general election ballot. Letter at 8. Thus, there remains the possibility that a party could seek expedited relief in this Court from the court of appeals' decision to remove Green Party candidates from the ballot.

as moot.[2] *Id.* Chief Justice Rose dissented. He would not have granted relief, but he concluded the case was not moot because a declaration of ineligibility still has meaningful consequences even if it would not result in a candidate's removal from the ballot. *Id.* at *3 (Rose, C.J., dissenting).

The relators did not seek review in this Court of any of the Third Court's actions. On August 26, numerous Republican candidates and organizations filed this original mandamus petition,[3] still seeking removal of the challenged candidates from the ballot but using a different procedural mechanism. Instead of asking for a declaration of ineligibility pursuant to chapter 145, they now challenge the Libertarians' ballot applications pursuant to section 141.034. The relators ask the Court to order the Chair of the Libertarian Party to (1) reject the applications of candidates who failed to pay the filing fee, (2) inform the Secretary of State that the Libertarian Party has rejected the applications, and (3) take all steps within her authority to ensure the challenged candidates do not appear on the ballot. The relators also ask, in the alternative, for a declaration of the Libertarians' ineligibility under chapter 145, although they do not argue that such a declaration would achieve removal of the Libertarians from the ballot at this time.

## II. Discussion

The relators correctly acknowledge that a declaration of ineligibility would no longer remove the Libertarian candidates from the ballot. "A candidate's name shall be omitted from the

---

[2] Under the same reasoning, the court of appeals dismissed as moot a third petition for writ of mandamus that sought similar relief and was filed three days after the deadline. *In re Tex. House Republican Caucus PAC*, No. 03-20-00424-CV, 2020 WL 5102565, at *1 (Tex. App.—Austin Aug. 25, 2020, orig. proceeding) (mem. op.).

[3] The Legislature has authorized this Court to "issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election . . . regardless of whether the person responsible for performing the duty is a public officer." TEX. ELEC. CODE § 273.061. *See* TEX. CONST. art. V, § 3(a) ("The Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State.").

4

ballot if the candidate . . . is declared ineligible on or before the 74th day before election day."
TEX. ELEC. CODE § 145.035. On the other hand, "[i]f a candidate . . . is declared ineligible after the 74th day before election day, the candidate's name shall be placed on the ballot." *Id.* § 145.039. This year, the "74th day before election day" was August 21. If a candidate is declared ineligible after that date, the Election Code nonetheless mandates that the candidate's name "shall be placed on the ballot." *Id.*

Recognizing this timing problem, the relators attempt to use a novel, alternative procedural path.[4] They seek the Libertarian candidates' removal from the ballot using the ballot-application challenge contemplated by section 141.034 of the Election Code: "An application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day before any ballot to be voted by mail is mailed . . . for the election for which the application is made." *Id.* § 141.034(a). According to the relators, their petition is timely because, for this year's general election, "the day before any ballot to be voted by mail is mailed" will be September 18. They contend that failure to pay a filing fee can be a matter of "form, content, and procedure" amenable to a ballot-application challenge. *See id.* §§ 141.032(a), 141.034(a). They allege the Libertarian Party Chair failed to "review" and "reject" the deficient applications as required by section 141.032, and they ask this Court to order her to do so. *Id.* § 141.032(a), (e).

---

[4] The cases relators cite applying section 141.034 each involved ballot-application challenges to major-party candidates' ability to appear on the primary ballot. *In re Meyer*, No. 05-16-00063-CV, 2016 WL 375033 (Tex. App.—Dallas Feb. 1, 2016, orig. proceeding); *In re Balderas*, No. 04-14-00026-CV, 2014 WL 173408 (Tex. App.—San Antonio Jan. 16, 2014, orig. proceeding); *Escobar v. Sutherland*, 917 S.W.2d 399 (Tex. App.—El Paso 1996, orig. proceeding). The relators cite no case in which section 141.034 has been used as they propose, to remove candidates from the general-election ballot after section 145.035's deadline to remove ineligible candidates.

The relators are correct that seeking a declaration of ineligibility under chapter 145 and lodging a ballot-application challenge under chapter 141 are distinct procedural avenues. *See Escobar v. Sutherland*, 917 S.W.2d 399, 408–09 (Tex. App.—El Paso 1996, orig. proceeding). Thus, their ballot-application challenge is not subject to the statutory deadlines or rules governing a request for a declaration of ineligibility. Of course, their ballot-application challenge is subject to the statutory rules governing ballot-application challenges. As explained below, those rules do not authorize ballot-application challenges like this one.

The statutes under which the relators challenge the Libertarians' applications govern "an application for a place on the ballot." Subchapter B of chapter 141 repeats this phrasing several times. Section 141.031 contains requirements for "[a] candidate's application for a place on the ballot that is required by this code." TEX. ELEC. CODE § 141.031(a). Section 141.032 requires the authority with whom "an application for a place on the ballot" is filed to review it and to reject it if it is non-compliant. *Id.* § 141.032(a), (e). And section 141.034 sets a deadline for challenges to an "application for a place on the ballot." *Id.* § 141.034(a). The Legislature used this terminology consistently, with no indication that the statutory scheme found in subchapter B of chapter 141 applies to anything other than "an application for a place on the ballot."

Thus, the Code is clear that in order for there to be a ballot-application challenge under section 141.034, there must first be "[a]n application for a place on the ballot." *Id.* Libertarian candidates, however, do not file an "application for a place on the ballot." Instead, they file an "application for nomination by convention" under a separate set of statutes found in subchapter B of chapter 181. *Id.* §§ 181.031–.034. Section 141.034 does not authorize challenges to "an application for nomination by convention." Instead, it deals with challenges to "an application for

6

a place on the ballot." *Id*. § 141.034. Likewise, section 141.032, which imposes a duty on the party chair to review applications and reject them if deficient, is triggered "[o]n the filing of an application for a place on the ballot." *Id*. § 141.032(a). In other words, the legal duty the relators seek to enforce—a party chair's duty to reject deficient applications—only arises "on the filing of an application for a place on the ballot." *Id*. For the Libertarian Party, however, no such applications exist. Because the Libertarian Party nominates candidates by convention, not by a primary election, Libertarian candidates file "[a]n application for nomination by convention." *Id*. § 181.032(a). These applications are governed by chapter 181 and are filed on a form promulgated by the Secretary of State that is distinct from the form used for applications for a place on the ballot.[5] Sections 141.032 and 141.034, which apply only to "an application for a place on the ballot," are therefore inapplicable to these Libertarian candidates.

The relators and the Attorney General point out that applications for nomination by convention "must comply with the requirements prescribed by Section 141.031 for an application for a place on the ballot." *Id.* § 181.031(b). They argue that because the Libertarians' applications for nomination were required to comply with section 141.031, they must also be subject to the other provisions governing applications for a place on the ballot. These include sections 141.032 and 141.034, which require the Party Chair to reject deficient applications and allow challengers to complain if she does not.

---

[5] *Compare* https://www.sos.state.tx.us/elections/forms/pol-sub/2-2f.pdf ("Application for a Place on the [Democratic or Republican] Party General Primary Ballot") *and* https://www.sos.state.tx.us/elections/forms/pol-sub/2-6f.pdf ("Independent Candidate's Application for a Place on the General Election Ballot") *with* https://www.sos.state.tx.us/elections/forms/pol-sub/2-8f.pdf ("Application for Nomination by Convention of _____ Party").

7

The text of the Code cannot support this construction. Section 181.031(b) does incorporate section 141.031's requirements for ballot applications into the requirements for applications for nomination by convention. It does not, however, incorporate any of chapter 141's other provisions, such as those governing challenges to applications for a place on the ballot. The Legislature could have, but did not, make applications for nomination by convention subject to other provisions governing applications for a place on the ballot. By explicitly incorporating only section 141.031 into the rules governing applications for nomination by convention, the Legislature did not silently incorporate sections 141.032 and 141.034 as well. Instead, it directed that *only* section 141.031, not the sections on which the relators rely, applies to applications for nomination by convention.

Moreover, the Election Code carefully distinguishes between the two types of application. In its entirety, section 181.031(b) provides: "An application must comply with the requirements prescribed by Section 141.031 for an application for a place on the ballot, *with changes appropriate to indicate that the application is for nomination by a convention instead of for a place on the ballot*." *Id.* (emphasis added). This language reinforces the distinction between the two types of application and emphasizes that the Libertarians' applications were not "for a place on the ballot." The Legislature consistently distinguished between the two different labels, and the courts are bound to respect that choice. To conflate the two different types of application for all purposes—when the Legislature has only treated them similarly for one purpose—would be to judicially re-write the statute. This we will not do.

Nor are the different labels merely semantic. As compared to an application for a place on the ballot, an application for nomination by convention plays a different role in a different process

for a differently situated political party. In a political party that holds primary elections, "[t]o be entitled to a place on the general primary election ballot, a candidate must make *an application for a place on the ballot*." *Id.* § 172.021(a) (emphasis added). If approved, the application allows the candidate access to the *primary* ballot. *Id.* Access to the general-election ballot is determined by the outcome of the primary and the certification of its results. *Id*. § 172.122(a). In political parties that choose candidates by conventions instead of primaries, such as the Libertarians, prospective candidates file applications for nomination by convention. *Id.* § 181.031(a). Both in name and in substance, these are not applications for a place on any ballot in the primary or general election. Instead, they are merely a prerequisite to standing for nomination at a convention, as the Code makes clear: "*To be entitled to be considered for nomination by a convention held under this chapter*, a person must make an application for nomination." *Id*. (emphasis added). As in the major parties, a right of access to the general-election ballot flows from certification of the results of the nominating process, not from the candidate's application. *See id*. § 181.068.

The relators' arguments assume the Libertarian candidates' applications were for a place on the general-election ballot. But that is no more true of the Libertarians' applications for nomination by convention than it would be for a Republican candidate's application for a place on the primary ballot. In both contexts, the candidate applies to have the opportunity to be chosen as the party's nominee. The candidate does not apply for a place on the general-election ballot. Again, in the words of the Election Code, the Libertarians filed their applications "[t]o be entitled to be considered for nomination by a convention," *id*. § 181.031(a), not for a place on any ballot. And because the Libertarians' applications seek nomination by convention rather than a place on

9

the ballot in any particular election, section 141.034 cannot be applied to them on its own terms. It provides in pertinent part:

> (a) An application for a place on the ballot may not be challenged for compliance with the applicable requirements as to form, content, and procedure after the day before any ballot to be voted early by mail is mailed to an address in the authority's jurisdiction *for the election for which the application is made*.

*Id.* § 141.034(a) (emphasis added). Section 141.034's deadline cannot be calculated unless there is an "election for which the application is made." *Id.* The Libertarians' applications for nomination by convention are not applications for a place on the ballot in any election, so section 141.034 is inapposite.

The relators object that if section 141.034 is unavailable to challenge a Libertarian candidate's application, these candidates can more easily evade the application requirements than can candidates whose applications are subject to a section 141.034 challenge. That may or may not be the case.[6] But the reality is that the Election Code often treats different political parties' nomination processes differently. Parties holding primary elections are subject to one set of rules, and other parties are subject to other sets of rules. These differences may seem to benefit or burden one class of parties or another, depending on the circumstances. That is not a reason to depart from the text of the Code by subjecting candidates nominated by convention to challenges the Legislature did not authorize.[7]

---

[6] We express no opinion on whether or to what extent applications for nomination by convention may be challenged at or before the convention for which the applications are made.

[7] The relators' construction of the Code would result in its own disparate treatment. As the relators see it, the applications of Libertarian candidates, submitted in December 2019, would be subject to attack up until the eve of the general election. The applications of major party candidates, however, became immune to challenge as of a date in mid-January 2020, the "50th day before the date of the [primary] election." TEX. ELEC. CODE § 172.0223(b).

10

This does not mean the filing fee requirement of section 141.041 is unenforceable. Had the relators obtained a declaration of the Libertarian candidates' ineligibility by August 21, the challenged candidates could potentially have been removed from the ballot. *Id.* § 145.035. The statute imposing the filing fee provides: "[T]o be *eligible* to be placed on the ballot for the general election for state and county officers, a candidate who is nominated by convention under Chapter 181 or 182 must" pay the filing fee or submit petitions in lieu of the fee. *Id.* § 141.041 (emphasis added). For a candidate required to pay the fee, doing so is a prerequisite to being "*eligible* to be placed on the ballot." *Id.* (emphasis added). When the Legislature specifies the consequence of violating a statute, its decision controls. *State Dep't of Highways & Pub. Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex. 1992). Here, the consequence of failing to pay the fee is that the candidate is not "eligible." We are not persuaded by arguments that a declaration of ineligibility is somehow not a proper mechanism to decide whether a candidate is "eligible." The filing-fee issue could have been raised in a timely action to declare the Libertarian candidates ineligible.[8] Section 141.034, however, does not provide an alternative pathway by which to remove these candidates from the ballot.

---

[8] The relators and the Attorney General contend that failure to pay the section 141.041 filing fee is a matter of the "form, content, and procedure" of the candidate's application, not a matter of his eligibility, and therefore subject only to a section 141.034 challenge. *Id.* § 141.034(a). Because the relators' petition must be denied for other reasons, we express no opinion on whether failure to pay a filing fee is a matter of the "form, content, and procedure" of the candidate's application. We note, however, that even if failure to pay the fee were a matter of "form, content, and procedure," that would not change the fact that it is also, by clear legislative direction, a matter of whether a candidate is "eligible." By dictating that a candidate must pay the fee (or file petitions) "to be *eligible* to be placed on the ballot," the Legislature made abundantly clear that failure to pay the fee—whatever else it may mean—renders a candidate not "eligible" and therefore potentially subject to a declaration of ineligibility under chapter 145. *Id.* § 141.041(a) (emphasis added). *But see In re Francis*, 186 S.W.3d 534, 535 (Tex. 2006) (declining to remove candidate from ballot despite procedural misstep).

Finally, the relators ask, in the alternative, for a declaration of ineligibility under chapter 145, although they do not argue this relief would remove the challenged candidates from the ballot at this time. We agree with the dissenting justice in the related court of appeals litigation, who concluded that a suit to have a candidate declared ineligible is not mooted merely because such a declaration will not result in removal from the general-election ballot. *In re Nat'l Republican Congressional Comm.*, 2020 WL 5100110, at *3 (Rose, C.J., dissenting). The Election Code explicitly contemplates declarations of ineligibility after the deadline for removing candidates from the ballot. TEX. ELEC. CODE § 145.003(b), (d), (g). One concrete, legal effect of such a declaration is to prevent the ineligible candidate from taking office should he win the election. *Id.* § 145.005(b). Although the relators' request for a declaration of ineligibility is not moot, we decline to decide it here so as not to delay a decision on the principal question presented. Should the relators wish to continue seeking a declaration of ineligibility, they may do so in an appropriate venue.

The petition for writ of mandamus is denied.


**OPINION DELIVERED:** September 5, 2020